[Crim. No. 2543.   Third Dist.   Sept. 30, 1954.]

THE PEOPLE, Respondent, v. ALFRED H. SWENSON, Appellant.

Orrin K. Airola for Appellant.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

WARNE, J. pro tem.*—Appeal from the judgment of conviction of the crime of embezzlement and from the order denying a new trial. Appellant was charged by information with the crime of embezzlement committed on or about the 8th day of May, 1953, in that the appellant *fraudulently* disposed of a 1953 Mercury automobile, which was then and there in the possession of said Alfred H. Swenson, alias Howard Swensen, appellant, under a contract of purchase not yet fulfilled.

The facts are these: Appellant, at the time of the commission of the offense, was employed as a salesman and manager for Loma Motors, in charge of that company's place of business at San Andreas. The principal place of business of Loma Motors was at Lodi, California. On March 3, 1953, Loma Motors sold to the appellant a 1953 Mercury Sport Coupé to be used by appellant as a demonstrator. Appellant made a down payment of $142.38, leaving a balance due after the addition of registration fees, etc. of $2,772. The contract of sale was the usual conditional sales contract containing the specific provision that title to the automobile should remain in the seller until all of the obligations of the purchaser were fully complied with and discharged. The contract contained the further provision that the purchaser should not sell or otherwise dispose of his interest in the automobile without the written consent of the seller. The contract was sold to the Anglo-California National Bank by Loma Motors, and the bank then became the legal owner. Under the terms of the original contract payments were to be made to the bank.

On May 8, 1953, the appellant sold the aforementioned automobile to one James L. Egan. At that time Mr. Egan

---

*Assigned by Chairman of Judicial Council.

turned over to the appellant as a trade-in a 1951 Mercury automobile and gave the appellant a check payable to the order of Loma Motors in the sum of $1,100. Later, on July 1, 1953, appellant and Mr. Egan entered into a statement of transaction in which it was shown that the trade-in allowance on the 1951 Mercury and the check for $1,100 constituted the full price of the car. The appellant never at any time notified Loma Motors or Anglo Bank that he had sold the 1953 Mercury. The check for $1,100 which appellant received from Mr. Egan, and which as stated was made payable to Loma Motors, was cashed by the appellant and deposited in his own personal account. The 1951 Mercury which appellant received from Mr. Egan he later sold to a Mr. Jackson. The proceeds from this sale were also pocketed by the appellant. Following the sale of the 1953 Mercury automobile by the appellant, he made several purported payments under the terms of his contract by means of checks. Some of these checks, however, were returned because of insufficient funds. Sometime in May or June, 1953, Mr. Christie, who at that time was general manager of Loma Motors in Lodi, discussed the matter of the 1953 Mercury with the appellant, at which time he asked the appellant concerning the whereabouts of the automobile and the appellant replied that someone was using it on a demonstration. A week or so later Mr. Christie again asked appellant where his demonstrator was, and was unsuccessful as to learning its location, except that it was not around the place of business. The Mercury automobile was repossessed by the bank in November, 1953, and turned over to Jack Geer, one of the original owners of Loma Motors. Loma Motors then paid the bank the remaining amount due on the contract.

As grounds for reversal of the judgment appellant makes three contentions: (1) That the information insufficiently charges the commission of the offense in that the information fails to allege that the defendant committed the acts "with intent to injure and defraud the lessor or owner"; (2) that the evidence is insufficient to show fraud or concealment by the defendant; (3) that the court erred in giving certain instructions.

With reference to the first contention appellant states that the information did not charge him with an intent to injure or defraud the owner of the property, and that therefore the information was defective. The information, so far as pertinent to a determination of this case, reads as follows:

"That the said defendant, on or about the 8th day of May, 1953, at and in the County of Calaveras, State of California, did fraudulently dispose of a 1953 Mercury automobile, which was then and there in the possession of the said defendant under a contract of purchase not yet fulfilled, by a sale of the same to James L. Egan; and that the said Mercury automobile was then and there of a value in excess of Two Hundred Dollars ($200.00)."

The criminal offense with which appellant was charged and convicted is defined by Penal Code, section 504a. That section in its entirety provides as follows:

"Every person who shall fraudulently remove, conceal or dispose of any goods, chattels or effects, leased or let to him by any instrument in writing, or any personal property or effects of another in his possession, under a contract of purchase not yet fulfilled, and any person in possession of such goods, chattels or effects knowing them to be subject to such lease or contract of purchase who shall so remove, conceal or dispose of the same with intent to injure or defraud the lessor or owner thereof, is guilty of embezzlement."

Section 952 of the Penal Code provides that in charging an offense, an indictment or information shall be sufficient if it contains in substance a statement that the accused has committed some public offense. The section provides also that the allegation in the information may be in ordinary and concise language without technical averments. It further provides that such allegation may be in the words of the statute or in any words sufficient to give the accused notice of the offense of which he is accused.

The gist of appellant's argument is that the clause at the end of section 504a which reads "with intent to injure or defraud the lessor or owner thereof . . ." relates to the first part of the section, as well as to the second part of the section and hence it is argued it is necessary that an information contain the quoted language. Be this as it may, we are of the opinion that the language of the information in the instant case is fully sufficient under the provisions of Penal Code, section 952. ■ Even assuming that the clause quoted above refers to both parts of the section, the only requirement contained in said clause is that the removal, concealment or disposition of property held under a contract of purchase not yet fulfilled be done with intent to defraud the owner. ■ The allegation that the appellant did a certain act fraudulently would inform the accused or any

person of reasonable intelligence that the act was done with intent to defraud. While it is elementary that for one to be guilty of embezzlement he must have intended to deprive the owner of his property unlawfully (*People* v. *Cannon*, 77 Cal.App.2d 678 [176 P.2d 409]; *People* v. *Borchers*, 199 Cal. 52 [247 P. 1084]), we are of the opinion, nevertheless, that the word "fraudulently" necessarily included the element of intent.

In *People* v. *Talbot*, 220 Cal. 3 [28 P.2d 1057], the court stated the following as to the use of the word "fraudulent" including the element of intent, on page 15:

"One of the definitions of 'fraud' given by the Standard Dictionary is: 'Any act . . . that involves a breach of duty, trust, or confidence, and which is injurious to another, or by which an undue advantage is taken of another,' and an act is declared to be fraudulent that is characterized by fraud. . . ."

As to whether the word "fraudulent" is synonymous with the phrase "intent to defraud" it may be stated that when an act is alleged to have been done fraudulently, it implies that such act was done with the intent to defraud.

In *Bank of Montreal* v. *Thayer*, 7 F. 622, the court had to decide upon the use of the word "fraudulent" in the pleadings where "intent to defraud" was not also alleged. The court stated, at page 625:

"It is said that a fraudulent intent is not alleged; but it is difficult to see how representations as to a matter of fact can be wrongful, fraudulent, and false, without they are made with a fraudulent intent. It is certainly necessary to prove the intent, and of course it must be alleged, but no form of words is necessary. If the terms employed by the pleader, taken in their ordinary signification, necessarily include the idea of a fraudulent intent, that is enough. We must give to the term 'fraudulently,' as found in the petition, the meaning which the law gives it, and which attaches to it in common usage, to-wit, a deliberately-planned purpose and intent to deceive and thereby to gain an unlawful advantage. . . . [To] say that the representations were made with intent to deceive, would add nothing to the allegation that they were falsely and fraudulently made."

This case was cited with approval by the United States Supreme Court in *Bullis* v. *O'Beirne*, 195 U.S. 606 [49 L.Ed. 340, 25 S.Ct. 118], where the court said at page 617:

". . . It is said that there is no averment in the complaint in this case of knowledge or intent to deceive upon the part of the plaintiff in error; but it is averred that the representations were falsely and fraudulently made, with the intent to further the pecuniary interest of the plaintiff in error, and were known to be false when made. Such allegations have frequently been held the equivalent of averments of specific intent. Indeed, it is difficult to perceive how a statement falsely and fraudulently made can be otherwise than intended to deceive. A statement fraudulently made, with knowledge of its falsity, must necessarily be intended to deceive."

In *Rick* v. *United States,* 161 F.2d 897, the court determined whether there was any real difference between a "fraudulent" tax return and a wilful attempt to evade a tax; it said that there was no real difference and that " 'fraudulent' includes an intent and involves a subject matter of which someone is to be deprived."

"As the term is used in an embezzlement statute making punishable a fiduciary of money who should 'fraudulently' convert the same to his own use, the word has some other than its usual meaning implying deceit, deception, artifice, trickery, *and means conversions made with intent to deprive* the beneficiary of the money permanently, or at least until restoration should be compelled. See *United States* v. *Summers* (D.C.W.D. Va.), 19 F.2d 627." (Ballentine's Law Dictionary, 2d ed. Italics added.)

Since the word "fraudulently" means with intent to defraud, the information was sufficiently drawn under the provisions of Penal Code, section 952.

Appellant next contends that the evidence is insufficient to establish that when the appellant sold the automobile to Mr. Egan he did so with intent to defraud the legal owner. Appellant cites a number of cases holding that intent to injure or defraud is a necessary element of the crime of embezzlement. As to the correctness of the law cited there can be no issue with this general principle of law. ▮ This contention cannot be upheld for it was for the jury in the first instance and the trial court on the motion for a new trial to draw the inferences of guilt from the facts in the case. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) It appears from the statement of facts above set forth that appellant's guilt is logically inferable from those facts. ▮ ▪ "Where the circumstances are such as to justify an inference of guilt, the fact that an inference of innocence might likewise be drawn

therefrom does not present a question of law for review by an appellate court." (*People* v. *Adams, ante,* p. 128 [273 P.2d 318]; *People* v. *Martinez,* 20 Cal.App. 343 [128 P. 952].) There is also evidence in the record that the appellant led Mr. Egan to believe that title was being transferred to him (Egan) and that appellant had authority to sell the automobile. The statement of transaction on the sale of the automobile to Mr. Egan indicates that title passed to the purchaser upon full payment of the purchase price. The document shows on its face that the full purchase price had been paid.

Appellant's last contention is that certain instructions were erroneous and prejudicial and thereby constituted reversible error. The instructions have been viewed singly and as a whole, with the result that appellant's contention cannot be sustained.

When the court gave an instruction to the jury on the necessity of joint operation of act and intent, and included in such instruction the idea of general criminal intent, it may have committed some error. (*People* v. *Booth,* 111 Cal.App.2d 106 [243 P.2d 872].) However, it is not sufficient error to constitute a reversal of this case. When the instructions are read as a whole, it is apparent that the jury was fully instructed as to the necessity of finding that defendant sold this automobile with the specific intent of defrauding the owner.

The jury was instructed, by instructions submitted by both plaintiff and the defendant, that it must find the specific intent to defraud before defendant could be found guilty as charged. Even though the instruction was not necessary, it was not prejudicial in the light of the evidence and the other instructions; therefore, it cannot be held to be reversible error.

Appellant objects to two instructions which refer to section 504a of the Penal Code, because nowhere in the instructions is section 504a of the Penal Code set out *in toto.* Suffice it to say that the portion of 504a set out in the instruction is the applicable portion of the section and sets forth all the necessary elements to the crime as charged. The matter omitted is not applicable to the present proceeding, and it would only have tended to confuse the jury to quote to them such parts as were not necessary to the determination of this proceeding.

The last instruction which appellant asserts was erroneous stated that: "When the evidence shows that a person voluntarily did that which the law forbids and which it declares to be a crime, he has no defense in the fact, if it

be a fact, that he did not know that his act was unlawful or that he believed it to be lawful.'' This is merely a statement of the general rule that ignorance of the law is no excuse. This was given to show that defendant could not base his defense on the ground that he did not know it was criminal to fraudulently dispose of or sell the personal property of another which was in his possession and subject to a contract of purchase not yet fulfilled. Appellant contends that the giving of this instruction allowed the jury to convict the appellant of the offense charged without finding specific intent to defraud. The reading of the instruction, together with other instructions, clearly shows that no such meaning could have been imparted to the jury. This instruction relates to defendant's knowledge, and not to whether or not he had the specific intent necessary. This latter element is covered in other instructions.

Instructions must be read as a whole and each instruction cannot contain within it all of the elements which are covered by other instructions. When the instructions are read in their entirety, and it appears that the jury was fully and fairly advised as to the quality and degree of proof necessary before the defendant could be convicted, that is all the law requires. (*People* v. *Cornett,* 93 Cal.App.2d 744, 750 [209 P.2d 647] ; *People* v. *Deibert,* 117 Cal.App.2d 410 [256 P.2d 355].) There is no prejudicial error in the instructions when they are considered in their entirety, particularly in view of the cautionary instructions that were given concerning the burden of proof, the elements necessary to the crime, and the jury's duty to weigh the evidence.

The judgment and the order denying a motion for a new trial are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied October 14, 1954, and appellant's petition for a hearing by the Supreme Court was denied October 27, 1954.