[Crim. No. 1143.    Fourth Dist.    July 18, 1957.]

THE PEOPLE, Respondent, v. SALVADOR TORRES,
Appellant.

Dale C. Miller, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

GRIFFIN, J.—In an amended information defendant was charged with violating section 4532, subdivision (a) of the Penal Code (escape from lawful custody of a police officer without violence, he then being charged with a felony, armed robbery). A jury trial resulted in a guilty verdict.

On this appeal defendant's main claim is that the evidence is insufficient to justify the verdict. He concedes that he escaped from the custody of the arresting officer but argues that the evidence does not show a lawful arrest under section 836 of the Penal Code; that the evidence does not show that a complaint for armed robbery had been previously charged against him; that prior to his arrest he was not shown a warrant of arrest, after demand; and that there was no sufficient showing that a warrant of arrest had been previously issued, citing sections 841, 842 and 844 of the Penal Code; and 40 American Law Reports 62, 66.

The record at the trial shows from the testimony of the arresting officer that two months prior to the date of the arrest, an armed robbery had been committed in Corona; that a warrant for defendant's arrest in connection therewith had been outstanding since April 30, 1956; that he had been trying to locate defendant since that time; that as he and another officer were coming by defendant's home they saw

638

him on the lawn, about 6:30 p. m., and they parked their prowl car, walked toward defendant, and he started to go into his house; that they told him "he was wanted at the police station"; that defendant said: "Do you have a warrant?" and he told him: "We have a felony warrant for your arrest at the station," that "This is a felony charge and I don't have to have the warrant with me"; that defendant started to run into the house and tried to lock the screen door, and he pursued him; that when in the house he again told defendant he was under arrest and should "give himself up"; that defendant again demanded to see the warrant and he repeated that it was at the station; that defendant ran toward the kitchen, grabbed a long knife and turned on him and said he would cut him to pieces; that the officer pulled a gun and told defendant to drop the knife; that defendant's sister intervened and said she would call a lawyer, and that after again telling her, in the presence of defendant, that he was under arrest for strong armed robbery under section 211 of the Penal Code, she told the lawyer these facts and the lawyer told her to tell defendant to go with the officer and if it was a false arrest, to sue him; that defendant then asked for time to change his shoes in the bedroom; that defendant went there, closed the door, and escaped through the back entrance and was apprehended two weeks later.

All of this testimony went in without objection on the part of defendant's counsel. Over objection of defendant, the witness was asked if, aside from the existence of the warrant of arrest, he had independent knowledge that defendant was wanted in connection with the strong armed robbery offense and he answered that he did; that the captain of the department, as part of his duties, informed him of the robbery on the day the warrant was issued and that the defendant was named by the victim as one of the participants; and that he had previously served a warrant on one of the other participants. The other officer, who was with the arresting officer, corroborated this testimony to a great extent.

Defendant then produced certain witnesses who reiterated the facts as to what happened in the house that night without much variation. One said he was the one who talked to defendant's lawyer on the telephone on that occasion and told him the officers were there to take the defendant; that the lawyer told him there was a warrant for defendant's

arrest in the "sheriff's station" in Corona and that he then turned and told defendant about it; that it was then when defendant went to the bedroom to change his *clothes*; that he did not hear the officer tell the defendant he was under arrest but did hear him say he "had to take him in." One witness testified the officer did not tell the defendant he was under arrest but did say another officer at the police station did want to see and talk to defendant; that no warrant for his arrest was shown defendant at his home even though defendant requested it.

Defendant then took the witness stand and only one question was asked by his counsel and that was as to whether the police ever questioned him about the robbery after he was apprehended and taken into custody. He answered "No."

█ The uncontradicted evidence does show that a charge of robbery had been previously made and a warrant issued for defendant's apprehension; that although there was some conflict in the evidence, it shows defendant was informed that he was under arrest for a felony, to wit, armed robbery, and that the officers had reasonable belief and knowledge that a felony had been committed and that a warrant for defendant's·arrest existed; that when defendant demanded production of the warrant defendant was informed by his lawyer that a warrant for his arrest did exist. Apparently defendant no longer "required" the production of the warrant but fled from custody. We conclude that the evidence is sufficient to sustain the verdict. (*People* v. *Borbon,* 146 Cal.App.2d 315, 318-319 [303 P.2d 560]; *Dowdell* v. *Owl Drug Co.,* 121 Cal.App. 316 [8 P.2d 890]; *People* v. *Littlejohn,* 148 Cal.App.2d 786 [307 P.2d 425]; *United States* v. *Bianco,* 189 F.2d 716, 719; *People* v. *Ames,* 151 Cal.App. 2d 714, 722 [312 P.2d 1111]; *People* v. *Hood,* 150 Cal. App.2d 197 [309 P.2d 856]; Pen. Code, § 836, subd. 4; *People* v. *Duroncelay,* 48 Cal.2d 766, 771 [312 P.2d 690].)

The court gave, at the request of the prosecution, an instruction taken from section 4532, subdivision (b) of the Penal Code, reading:

"Every person charged with . . . a felony . . . who is in the lawful custody of any officer or person, who escapes or attempts to escape . . . from the custody of any officer or person in whose lawful custody he is, is guilty of a crime . . ."

█ Although the record is not clear, it appears that in arguing the case to the jury, counsel for defendant presumably copied one of the paragraphs of section 836 of the Penal

Code on the blackboard and omitted the remaining paragraphs. The court thereupon admonished him that he should quote the entire section and stated that the court was going to do so when it instructed the jury on the subject. It then appears the court later gave defendant's requested instruction, "as modified," in the language of section 836 of the Penal Code (five subdivisions) as to when a police officer may make an arrest without a warrant. It is defendant's argument that by reading these remaining subdivisions, it "tended to confuse and mislead the jury" since those paragraphs were not applicable to the evidence in the case, citing such authority as *People* v. *Monahan*, 59 Cal. 389 ; and *People* v. *Swenson*, 127 Cal.App.2d 658 [274 P.2d 229]. We see no merit to the claim. Most of these paragraphs were responsive to the issues and no prejudicial error appears in reading the entire section. (*People* v. *Bernard*, 21 Cal.App. 56, 58 [130 P. 1063] ; *People* v. *Gardner*, 128 Cal.App.2d 1, 8 [274 P.2d 908].)

Another claim is made that the court erred in not allowing defendant's counsel, on cross-examination of the arresting officer, to question him as to whether or not he did, on July 26, 1956, state in front of several named witnesses that on the night of defendant's arrest, he said he was "going to kill" this defendant. An offer of proof in this connection was made to show the bias and prejudice of this officer against defendant, citing *People* v. *Ryan*, 152 Cal. 364 [92 P. 853].

It is true that the courts are required to allow the utmost latitude in cross-examining witnesses as to their bias or prejudice in order that truth may prevail. (*People* v. *Pantages*, 212 Cal. 237, 239 [297 P. 890].) In the instant case the facts surrounding the arrest are not in conflict to any great extent and if defendant continued with his activity with the knife that night, as the evidence shows, it may well have been possible that the officer may have killed the defendant. This would not particularly affect the officer's veracity in testifying in the case. Since the material facts are fully established by other evidence we see no prejudicial error in the ruling of the court. (*People* v. *Martin*, 127 Cal.App.2d 777 [274 P.2d 509] ; *People* v. *Chand*, 116 Cal.App.2d 242, 251 [253 P.2d 499].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.