[Crim. No. 2529. Fourth Dist., Div. Two. Dec. 6, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. KENNETH JACKSON REDMOND, Defendant and Appellant.

Hillel Chodos for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

TAMURA, J.—Following a jury trial on an information charging him with one count of robbery (Pen. Code, § 211) and one count of escape (Pen. Code, § 4532, subd. (a)), defendant was found guilty on each count, motion for a new trial and probation were denied, and he was sentenced to state prison. Defendant now appeals from the judgment of conviction as to each count.

The escape count alleged that defendant escaped, without force or violence, from the lawful custody of deputy sheriffs of Riverside County while he was under arrest for a violation of sections 12025 (concealed weapon in vehicle) and 466 (possession of burglary tools) of the Penal Code. The facts relating to the escape were as follows:

In the early morning of January 7, 1965, plainclothes Sheriff's Deputies Hill and Balfe, driving an unmarked sheriff's unit, were on a stakeout in an area of Riverside County where there had recently been a high incidence of burglaries, particularly of commercial establishments. Shortly after 1 a.m. they passed a shopping center and noted that the businesses were closed and that there were no cars in the parking lot. At approximately 1:15 a.m., as they passed the same shopping center, they observed a vehicle about to exit from the parking lot to the street. The officers slowed down to permit the car to enter the street ahead of them, but when it failed to do so they proceeded on and the vehicle then entered the street behind them. In order to permit the vehicle to pass them so they could observe the occupants, the officers pulled to the curb and almost came to a stop; the following car also nearly stopped but thereafter passed the police vehicle. The officers noted three male occupants in the vehicle and observed that one in the right front seat was bending over and appeared to be reaching under the seat. The conduct of the occupants aroused the officers' suspicion so they stopped the vehicle. Hill approached the car, announced that he was a police officer, identified himself, and asked for and received identification from each occupant. The car was being driven by one Cassera, the owner; one Gomez was in the right front seat; and defendant was in the left rear seat. Not being satisfied with their explanation for their presence and noting a red-handled object protruding from under the right front seat, Hill asked the driver if he might check out the vehicle. The driver replied "Fine." A search of the vehicle revealed a pair of bolt cutters, two screw drivers, two pairs of gloves and a pry bar under the right front seat. Upon request, the owner unlocked

the trunk but the officer found nothing of interest in it. Returning to the interior of the vehicle, Hill opened a small air vent under the dashboard where he discovered a revolver, a brown paper sack which contained coins, and a plastic box. Hill held up the gun to the view of Officer Balfe who then informed all three that they were under arrest ". . . for a concealed weapon in the vehicle." The three were then ordered to place their hands on the vehicle so that they could be searched for weapons. After Balfe searched defendant and had started to search Gomez, defendant started running across the street. Balfe yelled "halt" and fired a warning shot into the air but defendant kept running and disappeared behind some buildings.

The facts relating to the robbery count were as follows:

At about 2 a.m. on January 14, 1965, a black 1939 Ford pulled into a Texaco service station in Riverside. When Nichols, the only employee on duty, walked up to the car, the driver, holding a revolver on his lap, handed Nichols a brown plastic bag and ordered him to fill it up. The employee placed $70 in the bag and handed it to the robber who then ordered him to turn around and drove away. During the five minutes the robber was at the station, Nichols had the opportunity to observe him for a total period of approximately two minutes. Several days after the incident Nichols was shown several pictures and selected one as the robber, but was not sure. At a later date he was shown more pictures and selected one of the defendant without reservation. At the trial he identified defendant as the robber, again without reservation. On a motion for a new trial, defendant's counsel informed the court that he had new evidence in the form of an affidavit by Nichols indicating he was not sure of his identification of defendant. The affidavit, however, was not produced nor was a continuance requested for an opportunity to do so. The motion for a new trial was denied. On this appeal, defendant moved this court for an order to augment the record to include the affidavit alleging that the failure of his trial counsel to produce it at the hearing for a motion for a new trial was inexplicable. Since the affidavit had never been introduced in evidence or offered in the trial court, the motion to augment was denied.

## ESCAPE COUNT

Defendant urges several grounds for the reversal of his conviction on the escape count but, as we view it, the controlling issue is the validity of his contention that the People

failed to allege and prove an offense of escape under section 4532, subdivision (a) of the Penal Code.

At the time of the alleged escape, section 4532 subdivision (a) provided in relevant part as follows: "Every prisoner arrested and booked for, charged with, or convicted of a misdemeanor who is confined in any county or city jail or prison or industrial farm or industrial road camp or who is engaged on any county road or other county work or who is in the lawful custody of any officer or person, . . . and who thereafter escapes or attempts to escape from such county or city jail, prison, industrial farm or industrial road camp or from the custody of the officer or person in charge of him while engaged on or going to or returning from such county work or from the custody of any officer or person in whose lawful custody he is, is guilty of a felony and, if such escape or attempt to escape was not by force or violence, is punishable by imprisonment in the state prison for not exceeding one year and one day, regardless of any prior convictions, or in the county jail not exceeding one year ; . . ."

Defendant was charged with the crime of escape under section 4532 subdivision (a) for an unauthorized departure from the custody of officers who had placed him under arrest for a misdemeanor. ██ ██ Defendant contends that since the People failed to allege or prove that he was "arrested and booked", the information failed to charge and the evidence failed to prove the crime of escape under section 4532 subdivision (a).[1]

██ Defendant argues that any fair grammatical analysis of section 4532 subdivision (a) patently reveals that the section is directed to escape by prisoners after they have been taken to jail and that it has no application to an unauthorized departure from the custody of an arresting officer prior to booking. He urges that this is the holding of *People* v. *Francisco* (1964) 228 Cal.App.2d 355 [39 Cal.Rptr. 503]. In that case defendant was convicted of escape under section 4532 subdivision (a) on evidence that when he was taken from the county jail to the county hospital for treatment and while unattended for a brief moment, he fled to the hospital grounds where he was promptly apprehended. The court reversed the conviction

---

[1]Although the defendant failed to demur or otherwise object to the sufficiency of the information, he is not foreclosed from raising it for the first time on appeal. The objection that the information does not allege facts sufficient to constitute the crime charged is not waived by a failure to demur or otherwise raise the objection in a trial court. (*People* v. *Blankenship,* 103 Cal.App.2d 60, 62 [228 P.2d 835].)

on the ground that there was no evidence that defendant had been convicted of a misdemeanor as alleged in the information. In response to the People's argument that lawful custody must be presumed, the court stated that "lawful custody" was merely one element of the offense of escape and that "imprisonment as the result of a misdemeanor 'arrest and booking,' 'charge,' or 'conviction' is another." The court's observation respecting the showing which the section requires as the basis for lawful custody was dictum since the People failed to submit any proof respecting derivation of custody. The case is authority, however, for the proposition that in order to establish an offense under section 4532 subdivision (a) the People must prove more than an unauthorized departure from lawful custody.

The Attorney General argues that section 4532 subdivision (a) may be read: "Every prisoner . . . who is in lawful custody of an officer . . . and who thereafter escapes . . . ," is guilty of escape, and that such construction is supported by *People* v. *Torres* (1957) 152 Cal.App.2d 636, 639 [313 P.2d 197], and *People* v. *Valenzuela* (1959) 171 Cal.App.2d 331 [340 P.2d 685]. *People* v. *Torres, supra,* however, does not support the construction urged by the People. There a conviction of escape under section 4532 subdivision (a) was affirmed where the defendant fled from the custody of an arresting officer prior to booking but a charge of robbery had previously been filed against defendant and a warrant for his arrest was issued and outstanding, although the officer making the arrest did not have the warrant in his possession. Thus, in that case, defendant was a prisoner "charged" with a felony and in the lawful custody of an officer at the time of his unauthorized departure. The court noted that the trial court correctly instructed the jury: " 'Every person charged with . . . a felony . . . who is in the lawful custody of any officer or person, who escapes or attempts to escape . . . from the custody of any officer or person in whose lawful custody he is, is guilty of a crime. . . .' " In *People* v. *Valenzuela* (1959) *supra,* 171 Cal.App.2d 331, a conviction for escape for an unauthorized departure from the custody of an arresting officer prior to booking was affirmed, but the issue here presented was apparently not raised.

So far as we are able to determine, the question raised by defendant in this case has never heretofore been squarely raised or met in the several cases in which convictions for

escape under section 4532 subdivision (a) for unauthorized departure from custody of arresting officers, prior to booking, have been before the appellate courts. (*People* v. *McConahay* (1949) 90 Cal.App.2d 596 [203 P.2d 791]; *People* v. *Paul* (1957) 147 Cal.App.2d 609 [305 P.2d 996]; *People* v. *Torres* (1957) *supra*, 152 Cal.App.2d 636; *People* v. *Valenzuela* (1959) *supra*, 171 Cal.App.2d 331.) See *People* v. *Darnell* (1951) 107 Cal.App.2d 541 [237 P.2d 525] where, in affirming defendant's conviction under section 4532 subdivision (a) for escape from a county jail after he had been sentenced on a charge of disturbing the peace, the court made the following observation: ''Again, had appellant broken away from the arresting officer before reaching the jail (a distinct offense under § 4532), the circumstances of the arrest would undoubtedly have been material.''

Were it not for the cases mentioned in the previous paragraph, we would have no hesitancy in construing the statute as suggested by the defendant. On its face, section 4532 subdivision (a) appears unequivocally to provide that the classes of prisoners to whom the statute applies is limited to those ''arrested and booked,'' ''charged with,'' or ''convicted of'' a misdemeanor. The existence of those decisions, however, necessitates a detailed analysis of the section and a review of its rather tortuous history.

The Penal Code of 1872 contained only three sections (105, 106 and 107)[2] dealing with escapes (other than allowing escapes and assisting escapes). They all related to escapes by prisoners confined in state prisons or other incarcerating institutions; there were no provisions making it a crime of escape to depart from the custody of an arresting officer prior to incarceration.

No relevant changes were made in the law until 1923 when section 107 was amended to read (Stats. 1923, ch. 125, p. 270, § 1): ''Every prisoner charged with or convicted of a felony who is confined in any jail or prison or an inmate of any public training school or reformatory or county hospital, or

---

[2]Section 105: ''Every prisoner confined in the State Prison for a term less than for life, who escapes therefrom is punishable by imprisonment in the State Prison for a term equal in length to the term he was serving at the time of such escape.''

Section 106: ''Every prisoner confined in the State Prison for a term less than for life, who attempts to escape from such prison is guilty of a felony.''

Section 107: ''Every prisoner confined in any other prison than the State Prison who escapes or attempts to escape therefrom is guilty of a misdemeanor.''

who is engaged on any county road or other county work or who is in the lawful custody of any officer, or person, who escapes or attempts to escape from such jail, prison, public training school, reformatory or county hospital, or from the custody of the officer or person in charge of him while engaged on or going to or returning from such county work or from the custody of any officer or person in whose lawful custody he is, is guilty of a felony and is punishable as provided in section one hundred eight of the Penal Code.''

In *In re Haines* (1925) 195 Cal. 605 [234 P. 883], the court was confronted with the question whether section 107 as amended in 1923 applied to prisoners convicted of a misdemeanor. Petitioner, who was serving a sentence in the county jail on a misdemeanor conviction, was convicted of escape under section 107 for fleeing from the custody of the sheriff while he was being transported to county work. He sought a writ of habeas corpus on the ground that the section, as amended, applied only to prisoners ''charged with or convicted of a felony.'' The court refused to be bound by a literal or grammatical construction of the section. It reasoned that the Legislature must have intended the section to apply to misdemeanor prisoners as well as felony prisoners because the provision relating to prisoners ''engaged on any county road or any county work'' could lawfully relate only to those convicted of a misdemeanor. It further noted that since former section 107 applied to both felony and misdemeanor prisoners, the Legislature could not have intended, by amending the section, to repeal that portion of the statute relating to misdemeanants. The court concluded that the section should be read so that the phrase ''charged with or convicted of a felony'' modified only the class of prisoners described in the first clause of the section.

No further relevant amendments to the Penal Code sections relating to escapes were made until 1941 when sections 105 and 106 were repealed and replaced by sections 4530 and 4531, respectively (Stats. 1941, ch. 106, pp. 1124, 1132, §§ 15 and 16), and section 107 was amended by restricting its coverage to felony prisoners who were inmates of public training schools, reformatories, or county hospitals, and by reenacting the balance of it as section 4532. (Stats. 1941, ch. 106, pp. 1080, 1124, §§ 2 and 15.)

Following the 1941 amendments, the question arose as to the applicability of new section 4532, the format and language of which was substantially the same as former section 107, to

those convicted of misdemeanors. In *In re Ramirez* (1942) 49 Cal.App.2d 709 [122 P.2d 361] the District Court of Appeal held that the section did not apply to misdemeanor prisoners. It sought to distinguish *In re Haines* (1925) *supra,* 195 Cal. 605, on the ground that the statute had been since amended and that the heading of the new section was different. However, the matter did not rest there. The issue was presented to the Supreme Court in *In re Halcomb* (1942) 21 Cal.2d 126 [130 P.2d 384] where the court reaffirmed *In re Haines, supra,* on the theory that that case had been on the books for more than 17 years and that the Legislature must have adopted that decision *sub silentio.* A dissent was filed by Justice (now Chief Justice) Traynor, concurred in by Justice Edmonds. Justice Traynor expressed the view that the section plainly and unequivocally limited the class of prisoners to which it applied to those ''charged with or convicted of a felony,'' and that the passage of time did not alter the situation. In 1943 the section was amended by adding the words ''or misdemeanor'' after the word ''felony'' (Stats. 1943 ch. 635, p. 2256, § 3), thus laying to rest the issue reconsidered in *In re Halcomb, supra.*

In 1953 section 4532 was divided into two paragraphs, the first dealing with misdemeanors and the second with felonies (Stats. 1953, ch. 755, p. 2017, § 1.) In 1955 the two paragraphs were designated ''(a)'' and ''(b)'' and amended by adding the word ''formally'' before the word ''charged'' in both subdivisions (a) and (b). Finally, in 1961, the word ''formally'' was deleted and the words ''arrested and booked'' were inserted in lieu thereof.

The People would have this court adopt a construction of section 4532 subdivision (a) similar to that adopted by the court in *In re Haines* (1925) *supra,* 195 Cal. 605. But the reasons which led the court in *In re Haines, supra,* to apply former section 107 to those convicted of misdemeanors are not available to justify the interpretation presently urged by the People. The court there found an ambiguity in the section because the provisions relating to work on county projects could not legally apply to felony prisoners. It also took cognizance of the fact that escape by those incarcerated for misdemeanors had theretofore always been a crime under former section 107. Moreover, to accept the People's interpretation of the statute in the instant case would compound confusion. Both subdivisions (a) and (b) of section 4532 would be equally susceptible to the construction that an unauthorized

departure from lawful custody of an officer constitutes an escape. The penalties prescribed under the two subsections, however, are quite different. In order to determine the proper subsection under which a defendant is to be charged, the words "every prisoner" must necessarily be qualified by the phrase "arrested and booked, charged with, or convicted of" a misdemeanor or a felony. The qualifying phrase cannot be ignored. (See *People* v. *Francisco, supra,* 228 Cal.App.2d 355.)

The People suggest, however, that a defendant may be deemed to have been "charged" within the meaning of the statute when he has been lawfully arrested.

In *People* v. *Serrano,* 123 Cal.App. 339 [11 P.2d 81], defendant was arrested and booked on suspicion of forgery during the weekend and escaped before a criminal complaint could be filed. The court held that the entry in the jail records and his arrest could be deemed to constitute a "charge" within the meaning of former Penal Code section 4532. In reaching this conclusion the court made reference to *People* v. *Garnett,* 129 Cal. 364, 366 [61 P. 1114], where, in construing the word "charged" as used in section 32 of the Penal Code dealing with the crime of harboring, concealing, or aiding persons "charged" with a felony, the court stated: "[T]he word 'charged' as used in the section means a formal complaint, information or indictment filed against the criminal, or possibly an arrest without a warrant might be sufficient." The observation relating to an arrest without a warrant was dictum.

■ The question raised in *Serrano, supra,* has been legislatively resolved by the addition of the words "arrested and booked." The addition of these clarifying words indicates that the Legislature did not intend the word "charged" to be construed to extend to an arrest without a booking. If that were so, it would not have included the word "booked." It manifestly appears that by adding the word "formally" before the word "charged" in 1955 and then substituting "arrested and booked" for "formally" in 1961, the Legislature intended some formality beyond arrest before a defendant may be deemed "charged" within the meaning of section 4532.[3]

---

[3]The following definition of the words "to 'book'" was added to the Penal Code in 1959: "To 'book' signifies the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, or any of these acts following an arrest." (§ 7, subd. (21).)

■ It is not the function of the courts, under the guise of interpretation, to make an act a crime where it has not been so classified or defined by the Legislature. Criminal statutes should not by interpretation be extended beyond their plain meaning. (*United States* v. *Braverman*, 373 U.S. 405 [10 L.Ed.2d 444, 83 S.Ct. 1370].) The defendant is entitled to the benefit of every reasonable doubt, whether of a question of fact or as to the true interpretation of words or the construction of words used in a penal statute. (*In re Tartar*, 52 Cal.2d 250, 257 [339 P.2d 553]; *People* v. *Alotis*, 60 Cal.2d 698, 708 [36 Cal.Rptr. 443, 388 P.2d 675]; *In re Zerbe*, 60 Cal.2d 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182]; *People* v. *Smith*, 44 Cal.2d 77, 79 [279 P.2d 33]; *People* v. *Stuart*, 47 Cal.2d 167, 175 [302 P.2d 5, 55 A.L.R.2d 705]; *People* v. *Valentine*, 28 Cal.2d 121, 143 [169 P.2d 1]; *People* v. *Ralph*, 24 Cal.2d 575, 581 [150 P.2d 401].) While it is true that this mandate does not require the court to go contrary to the manifest legislative purpose or to override common sense (*People* v. *Banks*, 53 Cal.2d 370, 391 [1 Cal.Rptr. 669, 348 P.2d 102]; *People* v. *Oliver*, 55 Cal.2d 761 [12 Cal.Rptr. 865, 361 P.2d 593]; *People* v. *Hallner*, 43 Cal.2d 715 [277 P.2d 393]), it is axiomatic that in order that a public offense be committed, there must be some statute, ordinance or regulation, prior in time to the commission of the act, which denounces the act as a crime. (*People* v. *Harris*, 191 Cal.App.2d 754, 758 [12 Cal.Rptr. 916].) The principle announced in some of the cases that escape statutes are to be liberally construed according to the fair import of their terms and favoring the punishment of all escaping prisoners (*People* v. *Armstrong*, 188 Cal.App.2d 745, 748 [10 Cal.Rptr. 618]; *People* v. *Wozniak*, 234 Cal.App.2d 162, 163 [44 Cal.Rptr. 215]) is neither inconsistent with nor can override the fundamental principle that statutes creating crimes may not be held to extend to acts not covered by the fair import of the statutory language. (See *United States* v. *Resnick*, 299 U.S. 207, 209 [81 L.Ed. 127, 129, 57 S.Ct. 126, 127].)

■ We conclude that the information and the evidence in support thereof failed to allege and prove the crime of escape under section 4532 subdivision (a) of the Penal Code.

■ The construction which, in our opinion, the plain language of the statute requires does not leave the inherent power of an officer to effect a valid arrest and retain custody of the arrestee as the only deterrent to resistance to arrest or flight from custody. There are other penal provisions relating to resisting arrest and obstructing an officer in the proper

execution of his duties. Thus, section 148 of the Penal Code provides that "[e]very person who willfully resists, delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars, or by imprisonment in a county jail not exceeding one year or by both such fine or imprisonment." Section 69 of the Penal Code provides that every person who attempts "by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon" him or who "knowingly resists, by the use of force or violence, such officer, in the performance of his duty" is punishable by a fine not exceeding $5000 or by imprisonment in the state prison not exceeding five years or in the county jail not exceeding one year, or by both such fine and imprisonment. The words "public officer" and "executive officer" as used in the sections have been held to include police officers. (*People* v. *Buice,* 230 Cal.App.2d 324, 335 [40 Cal.Rptr. 877]; *People* v. *Manriquez,* 138 Cal.App. 614 [33 P.2d 36]; *Manss* v. *Superior Court,* 25 Cal.App. 533, 535 [144 P. 298].)

The foregoing is not to suggest that unauthorized departure of an arrestee from the custody of an arresting officer prior to booking, charge, or conviction should not be made a crime of escape. We simply hold that that is a decision to be made by the Legislature.

In view of the foregoing, the judgment of conviction on the escape count must be reversed. It is therefore unnecessary to consider the remaining alleged grounds for reversal of the escape conviction.

### ROBBERY COUNT

█ With respect to the robbery conviction, defendant contends that he was prejudiced by the joinder of the escape and robbery counts in a single information and that this was aggravated by the language of the information which erroneously described the escape as "a different offense of the same class of crimes and offenses as the charge set forth in Count One [Robbery]." By his failure to demur to the information on the ground of misjoinder of counts, defendant waived that objection. (Pen. Code, § 1004; *People* v. *Kemp,* 55 Cal.2d 458 [11 Cal.Rptr. 361, 359 P.2d 913]; *People* v. *Zurica,* 225 Cal. App.2d 25, 31 [37 Cal.Rptr. 118].) With respect to the statement in the information that the offenses charged were of the same class, the transcript reveals that it was never read to the

jury. The judge read the two counts, omitting the phrase in question.

Defendant also contends that the trial court abused its discretion in denying his motion for a new trial on the robbery count. On the motion, defendant's trial counsel stated that he was basing it in part on the ground of newly discovered evidence in the form of an affidavit by the witness Nichols that he may not have been certain of his identification. Counsel stated: ''We have information to this effect and if the Court wishes and so orders, we will file an affidavit to this effect, duly notarized. I have a copy of this.'' The district attorney responded in part: ''. . . [W]e are not apprised of any such statement, we believe, that in order that this matter be properly before the Court, we should at least have an affidavit from this individual.'' Defense counsel neither offered an affidavit nor a copy thereof nor requested a continuance for an opportunity to offer it. The trial judge stated, ''In the present state of the record the motion is denied,'' and proceeded to arraign the defendant for sentencing. Defendant's counsel on appeal unsuccessfully sought an order from this court to augment the record by including an affidavit from Nichols. He then made a motion in the trial court to vacate the judgment for the sole purpose of including the affidavit in the record of the proceedings. That motion was denied and defendant has filed a separate appeal from the order denying the motion.

There was no abuse of discretion in the denial of the motion for a new trial. The record contains no explanation for defendant's failure to offer the affidavit, if one was in existence at that time, nor was a continuance requested so that the affidavit could be produced. Moreover, defendant made no showing that with the exercise of due diligence the additional information sought to be presented by way of affidavit could not have been procured prior to trial (*People* v. *Arguello,* 61 Cal.2d 210 [37 Cal.Rptr. 601, 390 P.2d 377]), nor that the witness would be willing to reappear and testify differently. (See *People* v. *Gompertz,* 103 Cal.App.2d 153 [229 P.2d 105].)

The offer of a witness, after the trial, to retract his sworn testimony is always looked upon with suspicion. (*People* v. *Langlois,* 220 Cal.App.2d 831 [34 Cal.Rptr. 116].) When a witness who has testified at a trial makes an affidavit that such testimony is false, little credence can ordinarily be placed on it and it is within the trial court's discretion whether or not the

showing merits the granting of a new trial. (*People* v. *McGaughran*, 197 Cal.App.2d 6, 17 [17 Cal.Rptr. 121].)

The judgment is reversed as to the escape count with directions to dismiss, and affirmed as to the robbery count.

McCabe, P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied January 4, 1967, and the petitions of the appellant and the respondent for a hearing by the Supreme Court were denied February 1, 1967. Peters, J., was of the opinion that the petitions should be granted.