[Crim. No. 12350. In Bank. Dec. 12, 1968.]

In re WILLIAM Z. CULVER on Habeas Corpus.

Lin B. Densmore for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Respondent.

TRAYNOR, C. J.—In this habeas corpus proceeding, petitioner attacks his conviction of violating Penal Code section 4532, subdivision (b), escape from custody, on the ground that the undisputed facts establish that the statute did not prohibit his conduct. (See *In re Zerbe* (1964) 60 Cal.2d 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840].)

On the evening of August 11, 1961, a deputy sheriff received a call in his patrol car stating that a person of petitioner's description had struck another person with a pool cue during a poolroom fight and was wanted by the authorities. Shortly thereafter the officer saw petitioner running across a field, apprehended him, and placed him under arrest. Petitioner struggled with the officer and fled. At that time no charges had been filed against him. Within an hour petitioner was again apprehended and taken into custody. At the time of the initial arrest the arresting officer had neither an arrest warrant nor reason to believe that a crime had been committed in his presence. He was therefore required, if he was to arrest petitioner at all, to arrest him for the commission of a

felony. (Pen. Code, § 836.) The felony for which petitioner was arrested was assault with a deadly weapon. (Pen. Code, § 245.) Subsequently, petitioner was formally charged with battery, a misdemeanor (Pen. Code, § 242) and, after a jury trial, was acquitted.

Shortly before his acquittal, petitioner was charged with and convicted of a violation of section 4532, subdivision (b), based upon his flight from the arresting officer immediately after his arrest.

■ At the time of petitioner's escape, section 4532, subdivision (b), provided that "Every prisoner charged with or convicted of a felony . . . who escapes . . . from the custody of any officer . . . in whose lawful custody he is, is guilty of a felony. . . ."[1] The crucial question is whether a person who has been arrested for a felony and escapes before being taken to a jail or other place of confinement is a "prisoner charged with . . . a felony" who "escapes" within the meaning of the statute.

■ The legislative history of subdivision (b) and the related provision of subdivision (a)[2] of section 4532 indicates that section 4532 applies only to persons incarcerated in jails and other institutions of confinement who escape therefrom or such persons who escape from the custody of those to whom they have been entrusted while temporarily outside such places of confinement.

The first escape statute was enacted in 1855 and applied only to persons convicted and sentenced to the state prison who escaped therefrom. (Stats. 1855, ch. 160, p. 203, § 1.) As

---

[1] The entire subdivision provided: "Every prisoner charged with or convicted of a felony who is confined in any county or city jail or prison or industrial farm or industrial road camp or who is engaged on any county road or other county work or who is in the lawful custody of any officer or person, who escapes or attempts to escape from such county or city jail, prison, industrial farm or industrial road camp or from the custody of any officer or person in charge of him while engaged on or going to or returning from such county work or from the custody of any officer or person in whose lawful custody he is, is guilty of a felony and is punishable by imprisonment in the state prison not exceeding 10 years, or in the county jail not exceeding one year; provided, that when said second term of imprisonment is to be served in the county jail it shall commence from the time such prisoner would otherwise have been discharged from said jail."

[2] At the time here pertinent, subdivision (a) provided that "Every prisoner *formally* charged with or convicted of a *misdemeanor* . . . who *thereafter* escapes . . . from the custody of any officer . . . in whose lawful custody he is, is guilty of a felony. . . ." (Italics added.) Except for the italicized words, the relevant text of subdivision (a) is identical with that of subdivision (b).

enacted in 1872, the Penal Code included three sections relating to escape. Sections 105 and 106 applied to escapes from state prisons, and section 107, the predecessor of section 4532, applied to escapes from all other prisons.[3] These sections applied only to prisoners confined in a prison who escaped or attempted to escape from the prison. Indeed, the Code Commissioners' notes defined the term ''escape'' to mean only an escape from prison, i.e., as ''the deliverance of a person who is lawfully imprisoned, out of a prison.'' (Code Commissioners' notes to section 105.) Since the requirement that the prisoner be serving a sentence was not included in section 107, that section applied to all prisoners in prisons other than state prisons whether they had been convicted and sentenced or were merely awaiting trial or other disposition. Section 107 did not apply to a person who had not yet been taken into a prison but who had merely escaped from the custody of an arresting officer. Such conduct could be punished, however, under section 148 of the Penal Code. (Resisting, delaying, or obstructing an officer in the discharge of his duties. See also, Stats. 1860, ch. 156, p. 125, § 1.)

In 1923 section 107 was amended to include ''every prisoner charged with or convicted of a felony . . . who escapes . . . from the lawful custody of any officer.'' Thus for the first time the escape statute contained language that might be construed to apply to an arrestee's flight from the arresting officer. There are no committee reports setting forth the purpose of the 1923 amendment. An examination of the amendment as it passed through the Legislature makes it clear, however, that the purpose of the amendment was not to enlarge the meaning of the word ''prisoner'' to include persons who had been arrested but not yet imprisoned, but to extend the coverage of the section to prisoners incarcerated in facilities other than prisons or who might be temporarily in custody outside the walls of a custodial facility, and to make the offense a felony instead of a misdemeanor.

The bill containing the amendment was entitled ''An act to

---

[3]Section 105 provided: ''Every prisoner confined in the State Prison for a term less than for life, who escapes therefrom is punishable by imprisonment in the State Prison for a term equal in length to the term he was serving at the time of such escape.''

Section 106 provided: ''Every prisoner confined in the State Prison for a term less than for life, who attempts to escape from such prison is guilty of a felony.''

Section 107 provided: ''Every prisoner confined in any other prison than the State Prison who escapes or attempts to escape therefrom is guilty of a misdemeanor.''

amend section [107] of the Penal Code relating to escapes and attempted escapes from county jails, city jails, and from the custody of the sheriff while at work on any county road." It provided: "Every prisoner confined in any jail or prison other than the state prison, and every prisoner who is engaged on any county road or other county work, who escapes or attempts to escape from such jail or other prison, or from the custody of the sheriff while engaged on or going to or returning from such work is guilty of a felony." (A.B. No. 939, introduced Feb. 1, 1923.) The Assembly retained the title but amended the text to read: "Every prisoner charged with or convicted of a felony who is confined in any jail or prison or an inmate of any public training school or reformatory or county hospital, or who is engaged on any county work or who is in the lawful custody of any officer or person, who escapes or attempts to escape from such jail, prison, public training school, reformatory or county hospital, or from the custody of the officer or person in charge of him while engaged on or going to or returning from such county work or from the custody of any officer or person in whose lawful custody he is, is guilty of a felony and is punishable as provided in [section 108]." (A.B. No. 939, as amended April 9, 1923.) After the Senate made a minor amendment, this bill was enacted. (Stats. 1923, ch. 125, p. 270, § 1.)

Although section 107 as thus amended made clear for the first time that any *prisoner* charged with or convicted of a felony who escaped from the lawful custody of any officer was guilty of the offense whether or not the escape was from within a custodial institution, it did not enlarge the definition of prisoner to include a person who has been arrested but has not yet been incarcerated. Had the Legislature intended to include escapes from arresting officers, it would have been a simple matter to amend the section to begin "Every *person arrested for,* charged with or convicted of a felony. . . ." Instead, its placement of the words "lawful custody of any officer or person" and its placement of the reference to escapes from "the custody of any officer or person in whose lawful custody he is" at the conclusion of the other kinds of custody and escapes demonstrates concern with escapes of those who had already been incarcerated. It was with respect to such persons that the Legislature made clear that all custody outside the walls of the named custodial institutions was included.

Substantially all of section 107 was reenacted in 1941 as section 4532 of the Penal Code. It is significant that this

enactment was one of many undertaken by the Legislature pursuant to a 1940 constitutional amendment (Cal. Const., art. X, § 7) that authorized the Legislature to create a statutory scheme for the management of *prisons*.[4] The language here involved was transferred to the new section 4532, which was included in new title 5: "Offenses relating to Prisons and Prisoners."[5] Those parts of section 107 that dealt with escapes from institutions other than prisons (e.g., reformatories, county hospitals) were left in section 107. Had the Legislature intended the language in question to apply to mere arrestees, it could easily have left that language in section 107 and changed the operative word therein from "prisoner" to "person" or placed that language in section 148 or in an entirely new section. Since the language in question was intended to refer to prisoners in custody while temporarily outside the places of their confinement, it was appropriately included in the statutory scheme of prison management and control.

Since 1941 section 4532 has been frequently amended.[6] Only the 1961 amendment, however, which became effective after petitioner's asserted escape, sheds any light on the question before us, and the cases interpreting earlier versions of the statute are not helpful. Although some cases stressed the basic statutory purpose of protecting the integrity of prisons (*In re Haines* (1924) 68 Cal.App. 522, 526-527 [229 P. 984]; *People* v. *Mackie* (1929) 100 Cal.App. 292, 293 [279 P. 821]; *People* v. *Serrano* (1932) 123 Cal.App. 339 [11 P.2d 81]; see *In re Haines* (1925) 195 Cal. 605 [234 P. 883])[7] others assumed that the statute applied at the moment a person was

[4]See, R. Kingsley, *The Work of the 1941 Legislature: Criminal Law* (1941) 15 So.Cal.L.Rev. 81; S. Sefton, *Code Sections on State Prisons and County Jails Revised and Codified* (1941) 16 State Bar J. 274-275.

[5]Added by Stats. 1941, ch. 106, pp. 1083, 1124, § 15.

[6]The section was amended in 1943, 1949, 1953, 1955, 1959, 1961, 1963, 1965, and 1968. Section 4532 has constantly been before the Legislature. Bills to amend this section have been offered in every legislative session since 1941 with the exception of those in 1951, 1947, and 1945. Thirteen amendments (not counting amendments to amending bills) were offered from 1941 to 1961, not one of which sought expressly to extend the coverage of section 4532 to include the unlawful departure of an arrestee prior to booking and incarceration.

[7]In *People* v. *Serrano, supra,* the court had to determine whether a person who had been arrested, booked on a charge of "suspicion of forgery" and jailed was "charged" within the meaning of section 107. In holding that he was, the court pointed out that it felt compelled to interpret "charged" liberally because the defendant had clearly been a prisoner who had escaped from a jail and that it was the booking and incarceration that made the section applicable. Thus, the court empha-

lawfully arrested. (*People* v. *Smillie* (1942) 55 Cal.App.2d 381 [130 P.2d 714]; *People* v. *McConahay* (1949) 90 Cal.App. 2d 596 [203 P.2d 791]; *People* v. *Segura* (1955) 134 Cal.App. 2d 532 [286 P.2d 471]; *People* v. *Paul* (1957) 147 Cal.App.2d 609 [305 P.2d 996]; *People* v. *Valenzuela* (1959) 171 Cal. App.2d 331 [340 P.2d 685]; see also, *People* v. *Torres* (1957) 152 Cal.App.2d 636 [313 P.2d 197]; *People* v. *Darnell* (1951) 107 Cal.App.2d 541, 546 [237 P.2d 525].)[8] None of the cases, however, discussed the question whether a person who had been arrested but not yet booked or taken to a jail or prison was a prisoner charged with a crime within the meaning of section 4532.

In 1961 the Legislature amended section 4532 by deleting the word "formally" from subdivision (a)[9] and adding the words "arrested and booked for" to both subdivisions (a) and (b), so that the section now reads "Every prisoner arrested and booked for, charged with, or convicted of a [misdemeanor (subdivision (a)) or felony (subdivision (b))] . . . ." In *People* v. *Redmond* (1966) 246 Cal.App.2d 852, 861 [55 Cal.Rptr. 195], the court held that this amendment was intended to clarify the meaning of the section and to indicate "that the Legislature did not intend the word 'charged' to be construed to extend to an arrest without a booking." Although the court mistakenly assumed that both subdivisions had theretofore required that the prisoner be "formally charged," its error in this respect does not vitiate its conclusion. ▮ We believe the amendment also supports our conclusion that the statute does not apply until an arrestee has been booked preparatory to incarceration in a jail or other place of confinement and thereby becomes a prisoner within its meaning.

By fixing booking as the time at which an arrestee may commit a felony by escaping, the Legislature has added precision to the requirement of incarceration that is implicit in the term "prisoner." The character of preincarceration custody

---

sized that the word "prisoner" was the principal operative word in the section and that the entry *in the jail records* of the basis for the detention was a sufficient "charge" to satisfy the statute. See, *id.* at pp. 341, 342.

[8]To the extent that these cases are inconsistent with our conclusion herein, they are disapproved.

[9]See footnote 3, *supra.* In 1955 the Legislature increased the crime of escape under subdivision (a) from a misdemeanor to a felony. (Stats. 1955, ch. 585, p. 1079, § 1.) Pursuant to that increase, the following italicized words were added to subdivision (a): "Every prisoner *formally* charged . . . who *thereafter* escapes . . . ." (Cf. *People* v. *Serrano, supra* (escape by prisoner booked and incarcerated but not yet formally charged).)

in the field may be fraught with uncertainty and may range from a temporary detention for investigation to an arrest for an undefined or ill-defined crime to an arrest for a clearly specified crime. ■ It was not unreasonable for the Legislature to conclude that section 148 [10] of the Penal Code and other statutes that protect officers in the performance of their duties (see, e.g., Pen. Code, §§ 243, 834a) are sufficient to cope with the problem of escapes from arresting officers, and that an arrestee who has not yet been incarcerated and who may have done no more than walk away from an arresting officer should not be declared guilty of the felony of escape.

The writ is granted and the petitioner is discharged from custody.

Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would deny the petition for the reasons expressed by Mr. Justice Bray in the opinion prepared by him for the Court of Appeal in *In re Culver* (Cal. App.) 68 Cal.Rptr. 544.

---

[10]The history of section 148 parallels that of section 4532. Stats. 1860, ch. 156, p. 125, § 1 declared it to be a crime to resist, obstruct, or oppose an officer attempting to make, or making, an arrest. Section 148 was included in the Penal Code of 1872 and its principal language, an expanded version of the 1860 statute, has remained unchanged since: "Every *person* who willfully resists, delays or obstructs a public officer in the discharge [of] any duty of his office . . . is punishable. . . ." (Pen. Code, § 148; italics added.) Section 148 applies to one who flees from an arresting officer after the arrest has been made. See *People* v. *Wilson* (1964) 224 Cal.App.2d 738, 743 [37 Cal.Rptr. 42], wherein the court held that one who fled from an officer after arrest and then procured a gun with which he held the officer at bay had violated section 148 *before* he obtained the gun. *Wilson* was disapproved on other grounds in *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206], but the court in *Kellett* nonetheless agreed that the flight from the officer constituted a separate offense from the procurement and threatened use of the gun. See also *People* v. *Derby* (1960) 177 Cal. App.2d 626 [2 Cal.Rptr. 401] (struggle, flight). Although most cases, like the instant case, involve a struggle prior to the flight, the use of force is not an element in the violation of section 148. See *In re Bacon* (1966) 240 Cal.App.2d 34, 51-55 [49 Cal.Rptr. 322].