184 Cal.App.4th 808 (2010)
109 Cal.Rptr.3d 307
THE PEOPLE, Plaintiff and Respondent,
v.
CARMELLA LIGONS, Defendant and Appellant.
No. B212616.
Court of Appeals of California, Second District, Division Five.
May 13, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*810 Joseph S. Klapach, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Roberta L. Davis and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

*811 OPINION
MOSK, J.

INTRODUCTION
In the published portion of this opinion, we hold that the trial court prejudicially erred in instructing the jury, in effect, that defendant could be convicted of attempted escape by force or violence under Penal Code section 4532[1] if it found that she attempted to escape from an officer's custody within the confines of the jail. Section 4532 does not apply to breaking away from the custody of an officer within the custodial facility. We therefore reverse the conviction on that count. In the unpublished portion of this opinion we reverse the conviction on another count on the basis of instructional error, and otherwise affirm the judgment.

BACKGROUND
Defendant and appellant Carmella Ligons (defendant) had been arrested for violating section 69 by resisting eviction from her residence following a foreclosure. On March 30, 2007, Long Beach Police Department Detention Officer Judy Gomez and her partner, Officer Teresa Olivarez, were working in the Long Beach Police Department's women's jail. Defendant was housed by herself in a cell. About 5:30 p.m., Officer Olivarez went to defendant's cell to collect defendant's dinner tray, plate, and utensils. Defendant's cell door had a flap through which the tray could be passed. When Officer Olivarez asked defendant to pass her tray through the flap, defendant smashed her arm on the flap and yelled, "They're beating me. They're beating me." Officer Olivarez again asked defendant to pass her tray through the flap, and defendant threw out the tray at Officer Olivarez.
Officer Gomez noticed that defendant had not returned a plastic spoon. The officers were required to collect all utensils because they could be used as weapons. Officer Gomez looked through the window in the door to defendant's cell and saw the spoon. Officer Olivarez asked defendant to return the spoon. Defendant did not respond, but instead kept raising the door flap and saying that the officers were beating her. When the officers again asked defendant to return the spoon, defendant refused, saying that she wanted to get out and go home. Defendant screamed, "I need to go home. I want to get out. I want to use the phone. I want to go home." Officer Gomez told defendant that she would get to use the telephone and go home, but not at that moment.
*812 Officer Olivarez asked defendant to step to the far end of her cell. Defendant complied. The officers opened the cell door slowly. Officer Gomez continued to talk to defendant, telling her to calm down, that she would go home, but not at that moment, and that she would be allowed to use the telephone. Office Gomez entered the cell first, and Officer Olivarez followed. Officer Olivarez retrieved the spoon and the officers began to back out of the cell. Officer Olivarez exited the cell first, followed by Officer Gomez. As Officer Gomez was backing out of the cell, defendant started to walk towards her. Defendant said that she wanted to use the telephone that was in the "control area" in front of the women's jail. Officer Gomez responded that she would roll a special pay telephone to defendant's cell that defendant would be able to use with the flap open. Defendant said, "I don't want to use that phone. I want to use the one in the front. I need to go home. I need to get out."
Defendant charged at Officer Gomez and started to push the officer out of the cell. Defendant said, "`I need to get out. I need to go home.'" Defendant's "whole body weight" was on the officer.[2] Officer Gomez pushed back while trying, at the same time, to back out of the cell. Officer Gomez's efforts to push defendant back were unsuccessful because defendant was much stronger than the officer. Defendant began to overpower Officer Gomez, and Officer Gomez pushed defendant as hard as she could. Defendant then charged Officer Gomez again and hit the officer under her arms. Defendant then pushed her way halfway out of the door. At the preliminary hearing, Officer Gomez testified that she had received injuries from "this"bruises under both of her arms, on her biceps, and on her left arm. At trial, Officer Gomez testified that defendant caused those injuries.
Officer Gomez jumped out of the way and told Officer Olivarez to close the door. Officer Olivarez attempted to close the door, but defendant's body was halfway through the doorway. Officer Gomez told defendant to go into her cell and sit down. Defendant tried to strike the officer. Defendant said, "I want to get the f--k out. I want to go home. I want to go home now." Officer Olivarez also instructed defendant to sit down, and continued to push on the door so defendant could not exit.
Officer Gomez called the men's jail on another floor for backup, but no one responded. Defendant continued to struggle to get out of the cell and, slowly, began to push her way out. Officer Olivarez called the men's jail and told a sergeant that she and Officer Gomez needed immediate assistance. Again, the officers did not receive any help. As defendant pushed her way out *813 of the cell, she attempted to strike Officer Gomez, saying, "I need to get the f--k out. I need to go home."
Officer Olivarez testified, "Towards the end of the incident [defendant] stated to Officer Gomez that she was going to f--k us up if she got out, and that was the point where we realized this was not going well. We were going to need to do something else to try to put an end to this before anybody got hurt." Officer Gomez told Officer Olivarez to hold the door for a few more minutes. Officer Gomez, who was unarmed, then ran to get a fire extinguisher believing that she could scare defendant into her cell by spraying her with the fire extinguisher.
Officer Gomez approached defendant with the fire extinguisher and told her, "Go have a seat. This is your last warning." Defendant responded, "No. I need to get the f--k out. I need to go home." Officer Gomez shoved defendant with the fire extinguisher to see if she could scare her. Defendant did not appeared to be scared and said, "`I'm tired of playing games with you. I need to go home. I've already told you. I need to get the f--k out and I'm going to beat you guys' f--king ass.'" Officer Gomez sprayed defendant in the face with a quick burst from the fire extinguisher. Defendant coughed and started to push her way out of the cell. Officer Olivarez stated that she could not hold the door any longer and Officer Gomez sprayed defendant in the face a second time with a prolonged spray. Defendant coughed and let go of the door. Officer Gomez pushed defendant, and Officer Olivarez closed the cell door. Officer Gomez testified that the struggle lasted from 20 to 30 minutes.
A jury convicted defendant of resisting an executive officer (§ 69), attempted escape by force or violence (§ 4532, subd. (b)(2)), and assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)). The trial court apparently found true the allegation that defendant suffered a prior conviction within the meaning of sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d), and struck that prior conviction for purposes of sentencing.[3] The trial court sentenced defendant to state prison for four years eight months consisting of a four-year term for defendant's attempted escape by force or violence conviction, a concurrent two-year term for her assault by means likely to produce bodily injury conviction, and an eight-month consecutive term for her resisting an executive officer conviction.
*814 On appeal, defendant contends, inter alia, that the trial court gave an erroneous instruction as to the attempted escape. Defendant asserts that the error was prejudicial and that therefore her conviction should be reversed.

DISCUSSION

I. The Trial Court Prejudicially Erred in Instructing the Jury on the Offense of Attempted Escape by Force or Violence

Defendant contends that the trial court erred in instructing the jury that she could be convicted of attempting to escape from "the lawful custody of an officer" in violation of section 4532. Defendant argues that under section 4532, it is illegal for a prisoner to escape from jail or to escape from the lawful custody of an officer while outside of jail, but it is not illegal for a prisoner to escape from the custody of an officer while in jail. We agree.
Section 4532, subdivision (b)(1) provides: "Every prisoner arrested and booked for, charged with, or convicted of a felony, and every person committed by order of the juvenile court, who is confined in any county or city jail, prison, industrial farm, or industrial road camp, is engaged on any county road or other county work, is in the lawful custody of any officer or person, or is confined pursuant to Section 4011.9, is a participant in a home detention program pursuant to Section 1203.016, who escapes or attempts to escape from a county or city jail, prison, industrial farm, or industrial road camp or from the custody of the officer or person in charge of him or her while engaged in or going to or returning from the county work or from the custody of any officer or person in whose lawful custody he or she is, or from confinement pursuant to Section 4011.9, or from the place of confinement in a home detention program pursuant to Section 1203.016, is guilty of a felony . . . ."[4]
The trial court instructed the jury on defendant's alleged violation of section 4532, subdivision (b)(2) with CALJIC No. 7.31 as follows:
"Defendant is accused in Count 2 of having committed the crime of attempted escape by force or violence, a violation of section 4532, subdivision (a)(2) (b)(2) of the Penal Code.
"Every prisoner arrested and booked for a felony who is confined in any city jail under the lawful custody of any officer, attempts to escape by force *815 or violence the lawful custody of that officer, is guilty of the crime of escape by force or violence in violation of Penal Code section 4532, subdivision (a)(2) (b)(2).
"The term `booked' means the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, or any of these acts following an arrest.
"The term `charged with' means that a formal complaint, information, alleging the commission of a crime by the defendant, has been filed.
"As used in this instruction, the words `force' and `violence' are synonymous and mean any wrongful application of physical force against property or the person of another.
"In order to prove this crime, each of the following elements must be proved:
"1. A person was arrested and booked or charged with a felony.
"2. That person was confined in a jail or prison under the lawful custody of an officer; and
"3. That person attempted to escape with specific intent to escape, with force or violence from jail or the lawful custody of such officer."
Defendant contends that subdivision (b)(1) of section 4532 proscribes a number of alternative and mutually exclusive theories of attempted escape and that one such theory of attempted escapethat concerning a prisoner's attempted escape from the "lawful custody of any officer"applies only to those attempted escapes from an officer's custody that occur outside the jail, such as, for example, when an officer transports a prisoner from jail to the courthouse. Thus, defendant argues CALJIC No. 7.31, as given, was erroneous because it permitted the jury to find defendant guilty of attempted escape by force or violence if it found she attempted to escape from an officer's custody within the confines of the jail.
(1) In support of her claim of instructional error, defendant relies on language from In re Culver (1968) 69 Cal.2d 898 [73 Cal.Rptr. 393, 447 P.2d 633]. There, the Supreme Court addressed whether an arrestee who fled from the arresting officer but before the booking of the person under arrest was a "prisoner" within the meaning of, and thus subject to, the provisions of subdivision (b) of section 4532. (69 Cal.2d at pp. 900-901.) The court analyzed in detail the legislative history of that section and concluded that the *816 legislative history "indicates that section 4532 applies only to persons incarcerated in jails and other institutions of confinement who escape therefrom or such persons who escape from the custody of those to whom they have been entrusted while temporarily outside such places of confinement." (Id. at p. 900.) Holding that because the arrestee had not yet been booked, he was not a "prisoner" within the meaning of section 4532, the court granted the petitioner's writ of habeas corpus. (69 Cal.2d at pp. 904-905.) The court said that it was not unreasonable for the Legislature to conclude that other provisions of the Penal Code were sufficient to deal with escapes from arresting officers and that "an arrestee who has not yet been incarcerated and who may have done no more than walk away from an arresting officer should not be declared guilty of the felony of escape." (Id. at p. 905.)
In a later decision, People v. Diaz (1978) 22 Cal.3d 712 [150 Cal.Rptr. 471, 586 P.2d 952], the Supreme Court explained that in In re Culver, supra, 69 Cal.2d 898, it had "pointed out that although the literal language of the section `might be construed to apply to an arrestee's flight from the arresting officer,' legislative history made it clear that the use of the term `prisoner' was intended as limiting the section either to those incarcerated in prison or `to prisoners incarcerated in facilities other than prisons or who might be temporarily in custody outside the walls of a custodial facility . . . .' [Citation.] We concluded, accordingly, that `the statute does not apply until an arrestee has been booked preparatory to incarceration in a jail or other place of confinement and thereby becomes a prisoner within its meaning.' [Citations.]" (People v. Diaz, supra, 22 Cal.3d at p. 715.)
(2)"`"In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.]" (People v. Lopez (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548].) In other words, if there is "no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said," and it is not necessary to "resort to legislative history to determine the statute's true meaning." (People v. Cochran (2002) 28 Cal.4th 396, 400-401 [121 Cal.Rptr.2d 595, 48 P.3d 1148].)' (People v. Licas (2007) 41 Cal.4th 362, 367 [60 Cal.Rptr.3d 31, 159 P.3d 507].) `We begin by examining the statute's words, giving them a plain and commonsense meaning.' (People v. Murphy (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) [¶] `But the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating *817 to the same subject matter must be harmonized to the extent possible. (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. (People v. Belton (1979) 23 Cal.3d 516, 526 [153 Cal.Rptr. 195, 591 P.2d 485]; Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].) ... [A]nd if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed (Metropolitan Water Dist. v. Adams (1948) 32 Cal.2d 620, 630-631 [197 P.2d 543]).' (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) [¶] `. . . Courts also look to the legislative history of the enactment. "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (Dyna-Med, Inc. v. Fair Employment & Housing Com.[,supra,] 43 Cal.3d 1379, 1387 . . . .) . . .'" (Absher v. AutoZone, Inc. (2008) 164 Cal.App.4th 332, 339-340 [78 Cal.Rptr.3d 817].) In addition, when a penal statute "is susceptible of two reasonable interpretations, the appellate court should ordinarily adopt the interpretation more favorable" to the accused. (People v. Avery (2002) 27 Cal.4th 49, 57 [115 Cal.Rptr.2d 403, 38 P.3d 1].)
(3) As discussed in In re Culver, supra, 69 Cal.2d at pages 901-902, the Legislature, by adding to a predecessor of section 4532 the language "`every prisoner charged with or convicted of a felony . . . who escapes . . . from the lawful custody of any officer,'" intended to "extend the coverage of the section to prisoners incarcerated in facilities other than prisons or who might be temporarily in custody outside the walls of a custodial facility . . . ." Later amendments did not bear on this conclusion. (69 Cal.2d at p. 904.)
(4) It defies common sense to consider bolting from the physical custody of a correctional officer within a jail or prison without intending to leave the custodial facility as an "escape" under section 4532. For example, if a prisoner breaks loose of a prison guard inside a cellblock or prison yard, or, as might be the case here, a jail inmate tries to break away from a correctional officer in order to get to a jail phone, those events would not fit within the customary understanding of a prison or jail "escape." (See Garner, Dict. of Modern Legal Usage (2d ed. 1995) p. 325 [escape refers to "an unlawful departure from legal custody"]; Black's Law Dict. (3d ed. 1933) p. 678 [escape is "[t]he departure or deliverance out of custody of a person who was lawfully imprisoned, before he is entitled to his liberty by the process of law"].) A prisoner who breaks loose from a correctional officer escorting him or her from one part of a prison or jail to another, without intending to leave the facility, might violate section 69 (obstructing or *818 resisting executive officers in performance of their duties), or sections 241.1 and 243.1 (assault and battery committed against a custodial officer)but the prisoner does not violate section 4532. As noted with respect to arresting officers in In re Culver, supra, 69 Cal.2d at page 905, the Legislature reasonably concluded that other statutes are adequate to protect correctional officers in the performance of their duties when the prisoner is within their custody.
(5) Section 4532 refers to the "custody of any officer or person." When confined in a penal institution, the prisoner is in the legal custody of that institutionnot of any individual officer within that institution, even if the prisoner might be in the physical custody of a correctional officer at a particular moment. (See §§ 653.75 [offense while in "custody in any local detention facility"], 13128 [public offense "while in custody in any local detention facility"], 13154 [public offense while "in custody in any local detention facility, or any state prison"].) Moreover, other statutes covering "escape" do not mention the custody by an officer. (See, e.g., §§ 107, 4133.)
(6) Accordingly, the language of the Supreme Court in In re Culver, supra, 69 Cal.2d 898, the legislative history of section 4532 referred to in that case, the wording of that statute and common sense combine to render an interpretation of the statute to exclude from an escape in violation of section 4532 merely breaking away from the physical custody of a correctional officer within a jail and with no intent to leave the jail.
(7) As given, CALJIC No. 7.31, contrary to section 4532, erroneously permitted the jury to find defendant guilty of attempted escape by force or violence if it found that she attempted to escape from the custody of an officer while in jail, even if it did not also find that defendant attempted to escape from the jail itself. That erroneous instruction prejudiced defendant. "An instruction that omits or misdescribes an element of a charged offense violates the right to jury trial guaranteed by our federal Constitution, and the effect of this violation is measured against the harmless error test of Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 70, 587 S.Ct. 824]. (People v. Williams (2001) 26 Cal.4th 779, 797 [111 Cal.Rptr.2d 114, 29 P.3d 197].) Under that test, an appellate court may find the error harmless only if it determines beyond a reasonable doubt that the jury verdict would have been the same absent the error. (Neder v. United States (1999) 527 U.S. 1, 15 [144 L.Ed.2d 35, 119 S.Ct. 1827].)" (People v. Samaniego (2009) 172 Cal.App.4th 1148, 1165 [91 Cal.Rptr.3d 874].) The record in this case does not support a holding of such harmless error.
Defense counsel, in pertinent part, argued to the jury that defendant "wanted to use the phone. She wanted to get out of that cell to use the phone. *819 She wanted to call internal affairs. She felt that she was being treated unfairly. That was her intent that day, and that's the only intent they can prove. Trying to get out of that cell. Nothing says she tried to walk out the door of that jail. When you look at the jury instruction it does not say `escape from a cell.' It says, `escape from prison, jail, or other custodial facility.' Ladies and gentlemen, they've not met their burden here."
Shortly thereafter, defense counsel attempted to explain the different standards that apply in criminal and civil cases. The trial court, on its own, informed the jury that defense counsel's explanation was "inaccurate" and that it would provide the jury with the law.
In rebuttal argument, the prosecutor stated: "Ladies and gentlemen, there's a classic defense that has been put up before you, and you noticed I was reading to you the charges of the defendant. I read those elements to you directly off a piece of paper. It's because that's what I have to prove to you. I don't have to prove to you anything more. I have to prove those elements. Now, ladies and gentlemen, you heard the judge's instruction. The defense attorney misstated the law. I'm not going to go over it again. I trust that all of you listened."
Defense counsel interjected, "Your Honor, I misstated the law as to my example." The trial court responded, in front of the jury, "There's another problem and you misstated the law as to the elements of the crime. So I'm going to instruct the jury when he finishes." The prosecutor concluded his argument.
Then, apparently out of the presence of the jury, the trial court and defense counsel engaged in the following discussion:
"The Court: I wanted to point out to counsel because of the comment I made that 4532 talks about a prisoner either being arrested, and booked for, or charged with, or convicted of . . ., and then it come down towards the end of the paragraph (a)(1), and not only can be convicted if you try to escape from the facility, but you can also be convicted if you tried to escape from, or attempt to escape from the custody of a person, or person in whose lawful custody you are.
"[Defense counsel]: Your Honor, I think that means that if you are detained and being arrested, and you are being carted into a car
"The Court: It might be applicable there.
"[Defense counsel]:and I think that for you to say in front of the jury that I have misled them.
*820 "The Court: You have because you were talking about, and all your examination talked about the fact that as she's trying to get out of jail, how many locks are there between her and the jail cell. If she's in lawful custody of somebody, whether they are taking her, in my understanding of the law taking her into jail, they are in their car, she tries to get out of the car or something, or she's in lawful custody in a jail or a prison, and she tries to get away from jail cell, the person, whoever has the custody, she is guilty of that crime in my opinion." (Italics added.)
The trial court then told defense counsel that it was willing to listen if defense counsel showed the court that it was wrong. The trial court told defense counsel that if she showed the trial court that it was wrong, the trial court would tell the jury that it should not have "chastised" defense counsel.
When trial reconvened, the trial court discussed with defense counsel whether a person violates section 4532, "[n]ot only if they are in jail and try to escape, but also if they are in the custody of a person that is a jailer and trying to escape." Defense counsel argued that defendant was not in the custody of Officers Gomez and Olivarez for purposes of section 4532. The trial court reasoned that Officers Gomez and Olivarez "are her security to keep her in the jail including in this case in the jail cell."
Then, at defense counsel's request, the trial court addressed the jury concerning its statement that defense counsel had misstated the law. The trial court explained to the jury that the trial court's normal practice was to review the jury instructions in advance, that it had not followed that practice in this case, and that "if there was any difference from what [it] was going to instruct and what [defense counsel] was talking about, we did not go over it enough so everybody would know what is being given. We usually do that and did not. It is my fault."
Thus, the record shows that defense counsel argued to the jury that the prosecution had not meet its burden of proof on attempted escape because the evidence only showed that defendant attempted to escape from her jail cell. Apparently referring to that argument, the trial court told the jury that defense counsel misstated the elements of the offense. Subsequent discussion between the trial court and defense counsel shows that the trial court believed defendant could be convicted solely for attempting to escape from her jail cell, i.e., escape from the custody of an officer. When the trial court later attempted to lessen the impact on the jury of its apparent criticism of defense counsel, it reinforced its message that defense counsel had misstated the elements of the attempted escape offense, albeit through no fault of her own. By its remarks, the trial court emphasized to the jury that it could find defendant guilty of attempted escape if it found she attempted to escape from *821 her jail cell. Under such a circumstance, we cannot conclude, beyond a reasonable doubt, that the jury would have convicted defendant of attempted escape in the absence of the error. (Neder v. United States, supra, 527 U.S. at p. 15; Chapman v. California, supra, 386 U.S. at p. 24; People v. Samaniego, supra, 172 Cal.App.4th at p. 1165.)
Respondent points to defendant's language that she needed to get out of jail and go home as reflecting that she intended to escape from the jail. Defendant's statements reasonably are susceptible of two interpretations: (1) that defendant was attempting to escape from the jail, and (2) that defendant wanted to be released from her cell and be permitted to use a particular telephone to arrange for her release from jail. Because we cannot conclude, beyond a reasonable doubt, that a reasonable jury would accept the former interpretation and reject the latter, the trial court's error was prejudicial. (Neder v. United States, supra, 527 U.S. at p. 15; Chapman v. California, supra, 386 U.S. at p. 24; People v. Samaniego, supra, 172 Cal.App.4th at p. 1165.) Accordingly, we reverse defendant's attempted escape by force or violence conviction.
II.-V.[*]

DISPOSITION
Defendant's convictions for attempted escape by force or violence and assault by means of force likely to produce great bodily injury are reversed. The judgment is otherwise affirmed.
Armstrong, Acting P. J., concurred.
KRIEGLER, J., Concurring and Dissenting.
I respectfully dissent from the portion of the majority opinion reversing defendant's conviction in count 2 for attempted escape. This case was tried on only one theorythat defendant attempted to escape from the jail facility. The case was not tried to the jury on the theory that defendant merely attempted to escape from her cell to use a telephone that was within the jail facility. The trial court never instructed the jury that it could convict defendant for attempting to escape from her jail cell. I simply do not agree that an equivocal portion of the jury instruction on attempted escape, which had nothing to do with the way this case was tried, resulted in any prejudice to defendant.
*822 There is no reason to address whether In re Culver (1968) 69 Cal.2d 898 [73 Cal.Rptr. 393, 447 P.2d 633][1] has any application to the factual situation before this court. Assuming defendant and the majority are correct that Penal Code section 4532, subdivision (b)(2), does not apply to a prisoner who merely intends to escape from the control of a custodial officer to go to some other part of a jail or other institution of confinement, and that the instruction on attempted escape included that improper theory, any error was completely harmless in the context of this trial.
A review of the record demonstrates that from beginning to end, the parties made clear to the jury that this case required proof that defendant intended to escape from the jail facility. At no time during the trial did the prosecution or defense suggest in any way that defendant could be convicted of attempted escape on the theory she was trying to get out of her jail cell to use a telephone that was within the confines of the jail. In other words, the theory of guilt which the majority relies upon to find reversible error was never part of defendant's trial. The record unambiguously demonstrates that defendant was tried and convicted on a proper theory, and there is absolutely no reason to believe the jury relied on any other theory.
The felony information charged defendant in count 2 with attempted escape by force or violence in violation of Penal Code sections 664 and 4532, subdivision (b)(2), describing defendant as a person "who did, while being a person described in Penal Code section 4532, subdivision (b)(2), attempt to escape and escape by force and violence." There is nothing in the language of the charge to suggest defendant might be subject to conviction for anything other than attempting to escape from the jail facility.
In his opening statement, the prosecutor discussed the elements of the charged attempted escape and told the jury he would be required to prove that defendant "attempted to escape by force or violence which will also be proved." In her opening statement, defense counsel told the jury the prosecution would not be able to prove that defendant had the required specific intent to escape. Defense counsel said the evidence would show defendant was asking to use the phone and merely wanted to get out of her jail cell for that purpose. Thus, the opening statements set the stage for a trial in which the jury would decide only one issuewhether defendant had the specific intent to escape from a jail facility.
*823 The issue became even more clearly defined in the arguments of counsel after the evidence was concluded. The prosecutor's argument was clear, concise, and precise as to what theory of attempted escape was involved in this case: "I have to prove to you that defendant specifically was trying to get out of that jail facility." (Italics added.) In fact, the prosecutor went further and eschewed the theory that defendant was guilty merely because she tried to leave her cell to use the telephone. The prosecutor specifically argued that the facts showed defendant was intent on escaping from the jail. "Ladies and gentlemen, it's clear that the defendant's intent was to get out of that jail." (Italics added.)
In her argument to the jury, defense counsel was every bit as explicit as the prosecutor in framing the issue for the jury. Defense counsel told the jury it would have to find defendant had the specific intent to "get out of that jail. Not out of the cell, out of the jail. Ladies and gentlemen, and you have to use force or violence to get out of the jail, not the cell. Again, the prosecutor has failed." (Italics added.) Later, defense counsel again told the jury that defendant "was trying to get out of the cell, not the jail." (Italics added.)
As the summary of the charge, opening statements, and arguments to the jury plainly demonstrate count 2 in this case was based on one theorythat defendant was attempting to escape from the jail facility. Neither the prosecution nor defense suggested any alternate theory of guilt.
It is true that the trial court was of the opinion that defendant could be convicted for attempting to escape from the jailers who controlled her at the jail cell, but that opinion was stated outside the presence of the jury. The court at one point informed the jury that defense counsel's explanation of the law was inaccurate, but it did so after defense counsel tried to explain the difference in the burden of proof between criminal and civil cases. Later, during the prosecutor's final argument, the court commented in front of the jury that defense counsel had misstated the elements of "the crime," but did not advise the jury which element of which crime was misstated. The majority opinion does not cite any instance in which the jury was told by the court that a conviction in count 2 could be based on a mere attempt to escape from the jail cell.
It also bears emphasis that the jury instruction with which the majority finds reversible fault was at best equivocal in its description of an alternate theory of guilt. In pertinent part, the jury was instructed that attempted escape is established when a "prisoner arrested and booked for a felony who is confined in city jail in the lawful custody of any officer who attempts to escape by force or violence the lawful custody of that officer . . . ." Later, the instruction advised the jury that one element of the charge in count 2 was that *824 defendant "attempted to escape with specific intent to escape by force or violence from the jail or the lawful custody of such officer." Again, the instruction does not mention an attempted escape from the jail cell.
I have serious doubts that the jury, after hearing an entire trial that focused on defendant's intent to escape from the jail, would have seized upon a few equivocal words at the end of a jury instruction and applied a theory of guilt that was never once articulated at trial to convict defendant. Whether viewed under the standard of review of People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243] or the more stringent standard of Chapman v. California (1966) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824], any error had no impact on the verdict and the judgment should be affirmed as to count 2.
In all other respects, I concur in the judgment.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion, parts II, through V.
[1] All statutory citations are to the Penal Code unless otherwise noted.
[2] At trial, Officer Gomez estimated that defendant weighed over 200 pounds at the time of the incident. In her report, Officer Gomez stated that defendant weighed 300 pounds.
[3] The clerk's transcript indicates that a court trial on the prior conviction allegation was held on August 13, 2007. The trial court's minutes for that trial do not reflect a finding by the trial court. The record on appeal does not include a transcription for the prior conviction trial. Thereafter, defendant moved to strike the priorthe clerk's transcript does not contain a copy of defendant's written motion (referred to by the trial court in ruling on defendant's motion) and the trial court granted the motion.
[4] Subdivision (b)(2) of section 4532 prescribes the punishment for a violation of subdivision (b)(1) that was accomplished by force or violence.
[*] See footnote, ante, page 808.
[1] The holding in Culver is that the crime of escape, in violation of Penal Code section 4532, subdivision (b)(2), is not committed unless the defendant has been booked into a jail or comparable facility. (In re Culver, supra, 69 Cal.2d at pp. 900-901.) Culver does not speak to the issue of whether Penal Code section 4532 is violated when a prisoner, after booking, escapes from the control of a custodial officer, although the prisoner remains within the confines of the jail or similar institution.