* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion, parts II. through V.
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 810 
OPINION
 INTRODUCTION
In the published portion of this opinion, we hold that the trial court prejudicially erred in instructing the jury, in effect, that defendant could be convicted of attempted escape by force or violence under Penal Code section 4532[1] if it found that she attempted to escape from an officer's custody within the confines of the jail. Section 4532 does not apply to breaking away from the custody of an officer within the custodial facility. We therefore reverse the conviction on that count. In the unpublished portion of this opinion we reverse the conviction on another count on the basis of instructional error, and otherwise affirm the judgment.
 BACKGROUND
Defendant and appellant Carmella Ligons (defendant) had been arrested for violating section 69 by resisting eviction from her residence following a foreclosure. On March 30, 2007, Long Beach Police Department Detention Officer Judy Gomez and her partner, Officer Teresa Olivarez, were working in the Long Beach Police Department's women's jail. Defendant was housed by herself in a cell. About 5:30 p.m., Officer Olivarez went to defendant's cell to collect defendant's dinner tray, plate, and utensils. Defendant's cell door had a flap through which the tray could be passed. When Officer Olivarez asked defendant to pass her tray through the flap, defendant smashed her arm on the flap and yelled, "They're beating me. They're beating me." Officer Olivarez again asked defendant to pass her tray through the flap, and defendant threw out the tray at Officer Olivarez.
Officer Gomez noticed that defendant had not returned a plastic spoon. The officers were required to collect all utensils because they could be used as weapons. Officer Gomez looked through the window in the door to defendant's cell and saw the spoon. Officer Olivarez asked defendant to return the spoon. Defendant did not respond, but instead kept raising the door flap and saying that the officers were beating her. When the officers again asked defendant to return the spoon, defendant refused, saying that she wanted to get out and go home. Defendant screamed, "I need to go home. I want to get out. I want to use the phone. I want to go home." Officer Gomez told defendant that she would get to use the telephone and go home, but not at that moment. *Page 812 
Officer Olivarez asked defendant to step to the far end of her cell. Defendant complied. The officers opened the cell door slowly. Officer Gomez continued to talk to defendant, telling her to calm down, that she would go home, but not at that moment, and that she would be allowed to use the telephone. Office Gomez entered the cell first, and Officer Olivarez followed. Officer Olivarez retrieved the spoon and the officers began to back out of the cell. Officer Olivarez exited the cell first, followed by Officer Gomez. As Officer Gomez was backing out of the cell, defendant started to walk towards her. Defendant said that she wanted to use the telephone that was in the "control area" in front of the women's jail. Officer Gomez responded that she would roll a special pay telephone to defendant's cell that defendant would be able to use with the flap open. Defendant said, "I don't want to use that phone. I want to use the one in the front. I need to go home. I need to get out."
Defendant charged at Officer Gomez and started to push the officer out of the cell. Defendant said, "`I need to get out. I need to go home.'" Defendant's "whole body weight" was on the officer.[2] Officer Gomez pushed back while trying, at the same time, to back out of the cell. Officer Gomez's efforts to push defendant back were unsuccessful because defendant was much stronger than the officer. Defendant began to overpower Officer Gomez, and Officer Gomez pushed defendant as hard as she could. Defendant then charged Officer Gomez again and hit the officer under her arms. Defendant then pushed her way halfway out of the door. At the preliminary hearing, Officer Gomez testified that she had received injuries from "this" — bruises under both of her arms, on her biceps, and on her left arm. At trial, Officer Gomez testified that defendant caused those injuries.
Officer Gomez jumped out of the way and told Officer Olivarez to close the door. Officer Olivarez attempted to close the door, but defendant's body was halfway through the doorway. Officer Gomez told defendant to go into her cell and sit down. Defendant tried to strike the officer. Defendant said, "I want to get the f — k out. I want to go home. I want to go home now." Officer Olivarez also instructed defendant to sit down, and continued to push on the door so defendant could not exit.
Officer Gomez called the men's jail on another floor for backup, but no one responded. Defendant continued to struggle to get out of the cell and, slowly, began to push her way out. Officer Olivarez called the men's jail and told a sergeant that she and Officer Gomez needed immediate assistance. Again, the officers did not receive any help. As defendant pushed her way out *Page 813 
of the cell, she attempted to strike Officer Gomez, saying, "I need to get the f — k out. I need to go home."
Officer Olivarez testified, "Towards the end of the incident [defendant] stated to Officer Gomez that she was going to f — k us up if she got out, and that was the point where we realized this was not going well. We were going to need to do something else to try to put an end to this before anybody got hurt." Officer Gomez told Officer Olivarez to hold the door for a few more minutes. Officer Gomez, who was unarmed, then ran to get a fire extinguisher believing that she could scare defendant into her cell by spraying her with the fire extinguisher.
Officer Gomez approached defendant with the fire extinguisher and told her, "Go have a seat. This is your last warning." Defendant responded, "No. I need to get the f — k out. I need to go home." Officer Gomez shoved defendant with the fire extinguisher to see if she could scare her. Defendant did not appeared to be scared and said, "`I'm tired of playing games with you. I need to go home. I've already told you. I need to get the f — k out and I'm going to beat you guys' f — king ass.'" Officer Gomez sprayed defendant in the face with a quick burst from the fire extinguisher. Defendant coughed and started to push her way out of the cell. Officer Olivarez stated that she could not hold the door any longer and Officer Gomez sprayed defendant in the face a second time with a prolonged spray. Defendant coughed and let go of the door. Officer Gomez pushed defendant, and Officer Olivarez closed the cell door. Officer Gomez testified that the struggle lasted from 20 to 30 minutes.
A jury convicted defendant of resisting an executive officer (§ 69), attempted escape by force or violence (§ 4532, subd. (b)(2)), and assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)). The trial court apparently found true the allegation that defendant suffered a prior conviction within the meaning of sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d), and struck that prior conviction for purposes of sentencing.[3] The trial court sentenced defendant to state prison for four years eight months consisting of a four-year term for defendant's attempted escape by force or violence conviction, a concurrent two-year term for her assault by means likely to produce bodily injury conviction, and an eight-month consecutive term for her resisting an executive officer conviction. *Page 814 
On appeal, defendant contends, inter alia, that the trial court gave an erroneous instruction as to the attempted escape. Defendant asserts that the error was prejudicial and that therefore her conviction should be reversed.
 DISCUSSION
I. The Trial Court Prejudicially Erred in instructing the Jury on the Offense of Attempted Escape by Force or Violence
Defendant contends that the trial court erred in instructing the jury that she could be convicted of attempting to escape from "the lawful custody of an officer" in violation of section 4532. Defendant argues that under section 4532, it is illegal for a prisoner to escape from jail or to escape from the lawful custody of an officer while outside of jail, but it is not illegal for a prisoner to escape from the custody of an officer while in jail. We agree.
Section 4532, subdivision (b)(1) provides: "Every prisoner arrested and booked for, charged with, or convicted of a felony, and every person committed by order of the juvenile court, who is confined in any county or city jail, prison, industrial farm, or industrial road camp, is engaged on any county road or other county work, is in the lawful custody of any officer or person, or is confined pursuant to Section 4011.9, is a participant in a home detention program pursuant to Section 1203.016, who escapes or attempts to escape from a county or city jail, prison, industrial farm, or industrial road camp or from the custody of the officer or person in charge of him or her while engaged in or going to or returning from the county work or from the custody of any officer or person in whose lawful custody he or she is, or from confinement pursuant to Section 4011.9, or from the place of confinement in a home detention program pursuant to Section 1203.016, is guilty of a felony. . . ."[4]
The trial court instructed the jury on defendant's alleged violation of section 4532, subdivision (b)(2) with CALJIC No. 7.31 as follows:
"Defendant is accused in Count 2 of having committed the crime of attempted escape by force or violence, a violation of section 4532, subdivision (a)(2) (b)(2) of the Penal Code.
"Every prisoner arrested and booked for a felony who is confined in any city jail under the lawful custody of any officer, attempts to escape by force *Page 815 
or violence the lawful custody of that officer, is guilty of the crime of escape by force or violence in violation of Penal Code section 4532, subdivision (a)(2) (b)(2).
"The term `booked' means the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, or any of these acts following an arrest.
"The term `charged with' means that a formal complaint, information, alleging the commission of a crime by the defendant, has been filed.
"As used in this instruction, the words `force' and `violence' are synonymous and mean any wrongful application of physical force against property or the person of another.
"In order to prove this crime, each of the following elements must be proved:
"1. A person was arrested and booked or charged with a felony.
"2. That person was confined in a jail or prison under the lawful custody of an officer; and
"3. That person attempted to escape with specific intent to escape, with force or violence from jail or the lawful custody of such officer."
Defendant contends that subdivision (b)(1) of section 4532 proscribes a number of alternative and mutually exclusive theories of attempted escape and that one such theory of attempted escape — that concerning a prisoner's attempted escape from the "lawful custody of any officer" — applies only to those attempted escapes from an officer's custody that occur outside the jail, such as, for example, when an officer transports a prisoner from jail to the courthouse. Thus, defendant argues CALJIC No. 7.31, as given, was erroneous because it permitted the jury to find defendant guilty of attempted escape by force or violence if it found she attempted to escape from an officer's custody within the confines of the jail.
In support of her claim of instructional error, defendant relies on language from In re Culver (1968)69 Cal.2d 898 [73 Cal.Rptr. 393, 447 P.2d 633]. There, the Supreme Court addressed whether an arrestee who fled from the arresting officer but before the booking of the person under arrest was a "prisoner" within the meaning of, and thus subject to, the provisions of subdivision (b) of section 4532. (69 Cal.2d at pp. 900-901.) The court analyzed in detail the legislative history of that section and concluded that the *Page 816 
legislative history "indicates that section 4532 applies only to persons incarcerated in jails and other institutions of confinement who escape there-from or such persons who escape from the custody of those to whom they have been entrusted while temporarily outside such places of confinement." (Id. at p. 900.) Holding that because the arrestee had not yet been booked, he was not a "prisoner" within the meaning of section 4532, the court granted the petitioner's writ of habeas corpus. (69 Cal.2d at pp. 904-905.) The court said that it was not unreasonable for the Legislature to conclude that other provisions of the Penal Code were sufficient to deal with escapes from arresting officers and that "an arrestee who has not yet been incarcerated and who may have done no more than walk away from an arresting officer should not be declared guilty of the felony of escape." (Id. at p. 905.)
In a later decision, People v. Diaz (1978)22 Cal.3d 712 [150 Cal.Rptr. 471, 586 P.2d 952], the Supreme Court explained that in In re Culver, supra, 69 Cal.2d 898, it had "pointed out that although the literal language of the section `might be construed to apply to an arrestee's flight from the arresting officer,' legislative history made it clear that the use of the term `prisoner' was intended as limiting the section either to those incarcerated in prison or `to prisoners incarcerated in facilities other than prisons or who might be temporarily in custody outside the walls of a custodial facility. . . .' [Citation.] We concluded, accordingly, that `the statute does not apply until an arrestee has been booked preparatory to incarceration in a jail or other place of confinement and thereby becomes a prisoner withinits meaning.' [Citations.]" (People v. Diaz,supra, 22 Cal.3d at p. 715.)
"`"In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.]" (People v. Lopez (2003)31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548].) In other words, if there is "no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said," and it is not necessary to "resort to legislative history to determine the statute's true meaning." (Peoplev. Cochran (2002) 28 Cal.4th 396, 400-401
[121 Cal.Rptr.2d 595, 48 P.3d 1148].)' (People v. Licas (2007)41 Cal.4th 362, 367 [60 Cal.Rptr.3d 31, 159 P.3d 507].) `We begin by examining the statute's words, giving them a plain and commonsense meaning.' (People v. Murphy (2001)25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) [¶] `But the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating *Page 817 
to the same subject matter must be harmonized to the extent possible. (Dyna-Med, Inc. v. Fair Employment HousingCom. (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67,743 P.2d 1323].) Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. (People v. Belton (1979) 23 Cal.3d 516, 526
[153 Cal.Rptr. 195, 591 P.2d 485]; Amador Valley Joint UnionHigh Sch. Dist. v. State Bd. of Equalization (1978)22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].) . . . [A]nd if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed (Metropolitan Water Dist. v.Adams (1948) 32 Cal.2d 620, 630-631 [197 P.2d 543]).' (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735
[248 Cal.Rptr. 115, 755 P.2d 299].) [¶] `. . . Courts also look to the legislative history of the enactment. "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (Dyna-Med, Inc. v.Fair Employment Housing Com.[, supra,]43 Cal.3d 1379, 1387. . . .) . . .'" (Absher v. AutoZone, Inc.
(2008) 164 Cal.App.4th 332, 339-340 [78 Cal.Rptr.3d 817].) In addition, when a penal statute "is susceptible of two reasonable interpretations, the appellate court should ordinarily adopt the interpretation more favorable" to the accused. (People v. Avery (2002) 27 Cal.4th 49, 57
[115 Cal.Rptr.2d 403, 38 P.3d 1].)
As discussed in In re Culver, supra, 69 Cal.2d at pages 901-902, the Legislature, by adding to a predecessor of section 4532 the language "`every prisoner charged with or convicted of a felony . . . who escapes . . . from the lawful custody of any officer,'" intended to "extend the coverage of the section to prisoners incarcerated in facilities other than prisons or who might be temporarily in custody outside the walls of a custodial facility. . . ." Later amendments did not bear on this conclusion. (69 Cal.2d at p. 904.)
It defies common sense to consider bolting from the physical custody of a correctional officer within a jail or prison without intending to leave the custodial facility as an "escape" under section 4532. For example, if a prisoner breaks loose of a prison guard inside a cellblock or prison yard, or, as might be the case here, a jail inmate tries to break away from a correctional officer in order to get to a jail phone, those events would not fit within the customary understanding of a prison or jail "escape." (See Garner, Dict, of Modern Legal Usage (2d ed. 1995) p. 325 [escape refers to "an unlawful departure from legal custody"]; Black's Law Dict. (3d ed. 1933) p. 678 [escape is "[t]he departure or deliverance out of custody of a person who was lawfully imprisoned, before he is entitled to his liberty by the process of law"].) A prisoner who breaks loose from a correctional officer escorting him or her from one part of a prison or jail to another, without intending to leave the facility, might violate section 69 (obstructing or *Page 818 
resisting executive officers in performance of their duties), or sections 241.1 and 243.1 (assault and battery committed against a custodial officer) — but the prisoner does not violate section 4532. As noted with respect to arresting officers in In re Culver, supra,69 Cal.2d at page 905, the Legislature reasonably concluded that other statutes are adequate to protect correctional officers in the performance of their duties when the prisoner is within their custody.
Section 4532 refers to the "custody of any officer or person." When confined in a penal institution, the prisoner is in the legal custody of that institution — not of any individual officer within that institution, even if the prisoner might be in the physical custody of a correctional officer at a particular moment. (See §§ 653.75 [offense while in "custody in any local detention facility"], 13128 [public offense "while in custody in any local detention facility"], 13154 [public offense while "in custody in any local detention facility, or any state prison"].) Moreover, other statutes covering "escape" do not mention the custody by an officer. (See, e.g., §§ 107, 4133.)
Accordingly, the language of the Supreme Court in In reCulver, supra, 69 Cal.2d 898, the legislative history of section 4532 referred to in that case, the wording of that statute and common sense combine to render an interpretation of the statute to exclude from an escape in violation of section 4532 merely breaking away from the physical custody of a correctional officer within a jail and with no intent to leave the jail.
As given, CALJIC No. 7.31, contrary to section 4532, erroneously permitted the jury to find defendant guilty of attempted escape by force or violence if it found that she attempted to escape from the custody of an officer while in jail, even if it did not also find that defendant attempted to escape from the jail itself. That erroneous instruction prejudiced defendant. "An instruction that omits or misdescribes an element of a charged offense violates the right to jury trial guaranteed by our federal Constitution, and the effect of this violation is measured against the harmless error test of Chapman v. California (1967) 386 U.S. 18, 24
[17 L.Ed.2d 70, 587 S.Ct. 824]. (People v. Williams
(2001) 26 Cal.4th 779, 797 [111 Cal.Rptr.2d 114, 29 P.3d 197].) Under that test, an appellate court may find the error harmless only if it determines beyond a reasonable doubt that the jury verdict would have been the same absent the error. (Nederv. United States (1999) 527 U.S. 1, 15 [144 L.Ed.2d 35,119 S.Ct. 1827].)" (People v. Samaniego (2009)172 Cal.App.4th 1148, 1165 [91 Cal.Rptr.3d 874].) The record in this case does not support a holding of such harmless error.
Defense counsel, in pertinent part, argued to the jury that defendant "wanted to use the phone. She wanted to get out of that cell to use the phone. *Page 819 
She wanted to call internal affairs. She felt that she was being treated unfairly. That was her intent that day, and that's the only intent they can prove. Trying to get out of that cell. Nothing says she tried to walk out the door of that jail. When you look at the jury instruction it does not say `escape from a cell.' It says, `escape from prison, jail, or other custodial facility.' Ladies and gentlemen, they've not met their burden here."
Shortly thereafter, defense counsel attempted to explain the different standards that apply in criminal and civil cases. The trial court, on its own, informed the jury that defense counsel's explanation was "inaccurate" and that it would provide the jury with the law.
In rebuttal argument, the prosecutor stated: "Ladies and gentlemen, there's a classic defense that has been put up before you, and you noticed I was reading to you the charges of the defendant. I read those elements to you directly off a piece of paper. It's because that's what I have to prove to you. I don't have to prove to you anything more. I have to prove those elements. Now, ladies and gentlemen, you heard the judge's instruction. The defense attorney misstated the law. I'm not going to go over it again. I trust that all of you listened."
Defense counsel interjected, "Your Honor, I misstated the law as to my example." The trial court responded, in front of the jury, "There's another problem and you misstated the law as to the elements of the crime. So I'm going to instruct the jury when he finishes." The prosecutor concluded his argument.
Then, apparently out of the presence of the jury, the trial court and defense counsel engaged in the following discussion:
"The Court: I wanted to point out to counsel because of the comment I made that 4532 talks about a prisoner either being arrested, and booked for, or charged with, or convicted of . . ., and then it come down towards the end of the paragraph (a)(1), and not only can be convicted if you try to escape from the facility, but you can also be convicted if you tried to escape from, or attempt to escape from the custody of a person, or person in whose lawful custody you are.
"[Defense counsel]: Your Honor, I think that means that if you are detained and being arrested, and you are being carted into a car —
"The Court: It might be applicable there.
"[Defense counsel]: — and I think that for you to say in front of the jury that I have misled them. *Page 820 
"The Court: You have because you were talking about, and all your examination talked about the fact that as she's trying to get out of jail, how many locks are there between her and the jail cell. If she's in lawful custody of somebody, whether they are taking her, in my understanding of the law taking her into jail, they are in their car, she tries to get out of the car or something, or she's in lawful custody in a jail or aprison, and she tries to get away from jail cell, the person,whoever has the custody, she is guilty of that crime in myopinion." (Italics added.)
The trial court then told defense counsel that it was willing to listen if defense counsel showed the court that it was wrong. The trial court told defense counsel that if she showed the trial court that it was wrong, the trial court would tell the jury that it should not have "chastised" defense counsel.
When trial reconvened, the trial court discussed with defense counsel whether a person violates section 4532, "[n]ot only if they are in jail and try to escape, but also if they are in the custody of a person that is a jailer and trying to escape." Defense counsel argued that defendant was not in the custody of Officers Gomez and Olivarez for purposes of section 4532. The trial court reasoned that Officers Gomez and Olivarez "are her security to keep her in the jail including in this case in the jail cell."
Then, at defense counsel's request, the trial court addressed the jury concerning its statement that defense counsel had misstated the law. The trial court explained to the jury that the trial court's normal practice was to review the jury instructions in advance, that it had not followed that practice in this case, and that "if there was any difference from what [it] was going to instruct and what [defense counsel] was talking about, we did not go over it enough so everybody would know what is being given. We usually do that and did not. It is my fault."
Thus, the record shows that defense counsel argued to the jury that the prosecution had not meet its burden of proof on attempted escape because the evidence only showed that defendant attempted to escape from her jail cell. Apparently referring to that argument, the trial court told the jury that defense counsel misstated the elements of the offense. Subsequent discussion between the trial court and defense counsel shows that the trial court believed defendant could be convicted solely for attempting to escape from her jail cell, i.e., escape from the custody of an officer. When the trial court later attempted to lessen the impact on the jury of its apparent criticism of defense counsel, it reinforced its message that defense counsel had misstated the elements of the attempted escape offense, albeit through no fault of her own. By its remarks, the trial court emphasized to the jury that it could find defendant guilty of attempted escape if it found she attempted to escape from *Page 821 
her jail cell. Under such a circumstance, we cannot conclude, beyond a reasonable doubt, that the jury would have convicted defendant of attempted escape in the absence of the error. (Neder v. United States, supra,527 U.S. at p. 15; Chapman v. California, supra, 386 U.S. at p. 24;People v. Samaniego, supra,172 Cal.App.4th at p. 1165.)
Respondent points to defendant's language that she needed to get out of jail and go home as reflecting that she intended to escape from the jail. Defendant's statements reasonably are susceptible of two interpretations: (1) that defendant was attempting to escape from the jail, and (2) that defendant wanted to be released from her cell and be permitted to use a particular telephone to arrange for her release from jail. Because we cannot conclude, beyond a reasonable doubt, that a reasonable jury would accept the former interpretation and reject the latter, the trial court's error was prejudicial. (Neder v. United States, supra, 527 U.S. at p. 15;Chapman v. California, supra, 386 U.S. at p. 24;People v. Samaniego, supra,172 Cal.App.4th at p. 1165.) Accordingly, we reverse defendant's attempted escape by force or violence conviction.
II. Sufficient Evidence Supports Defendant's Attempted Escape By Force Or Violence Conviction
Defendant contends that her conviction for attempted escape by force or violence is not supported by sufficient evidence because the prosecution failed to present sufficient evidence that she was "booked" for a felony as defined in section 7, subdivision 21 — one of the elements of the offense. The prosecution failed to establish that defendant was booked within the meaning of section 7, subdivision 21, defendant contends, because the record does not contain any evidence that her arrest was recorded in an official police record or that the police took her fingerprints or photograph. Sufficient evidence supports the jury's finding that defendant was "booked."
A. Standard of Review
"`When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (People v. Avila (2009) 46 Cal.4th 680, 701.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (People v. Medina (2009)46 Cal.4th 913, 919.) "A reversal for insufficient evidence `is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"` the jury's verdict. [Citation.]" (People v. Zamudio (2008)43 Cal.4th 327, 357.)
B. Factual Background
Two prosecution witnesses — Deputy Edwards and Officer Gomez — testified that defendant had been booked. Defendant also testified that she had been booked.
On direct examination, the prosecutor engaged in the following exchange with Deputy Edwards concerning the events that transpired after defendant was taken to the hospital:
"Q Eventually were you given the okay to book the defendant?
"A Yes.
"Q Where did you do that?
"A At Long Beach P.D."
Officer Gomez, on cross-examination engaged in the following exchange:
"Q Do you know how much [defendant] weighs approximately?
"A Approximately I just, when I checked her booking paperwork."
Defendant also testified that she had been booked. On direct examination, defense counsel and defendant engaged in the following exchange:
"Q Had you been booked and arrested on March 30th?
"A I was booked and arrested after I came from the hospital."
Later, on cross-examination, the prosecutor and defendant engaged in the following exchange:
"Q Ma'am, when you were actually brought into the Long Beach jail facility the first time, did they take you in some elevators?
"A To come up?
"Q Correct.
"A Deputy Edwards and Deputy Laws that's who booked me in.
"Q Hold on. Did you actually go up some elevators?
"A Yes.
"Q And did you go to a locked door to get in the jail?
"A You come underground through the car, with the cars so I was drove in, and then I went to the booking thing right there where Edwards talked to Officer-."
C. Relevant Legal Principles
One of the elements of the offense of escape by force or violence is that the defendant was "arrested and booked for, charged with, or convicted of a felony." (§ 4532, subds. (b)(1) (2).) Section 7, subdivision 21, defines the term "book" as "the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, or any of these acts following an arrest." (§ 7, subd. 21.) The trial court instructed the jury with CALJIC No. 7.31 that the prosecution had to prove, among other elements, that "A person was arrested and booked or charged with a felony."
The evidence was sufficient for a reasonable juror to find that defendant was booked as that term is defined by section 7, subdivision 21. Deputy Edwards testified that defendant was booked at the Long Beach Police Department. Officer Gomez, a detention officer at the Long Beach Police Department's women's jail, testified that she had "checked" defendant's "booking paperwork." Defendant, an admitted "ex-convict" who presumably was aware of the booking procedures, testified that she was booked at the jail after having been released from the hospital, and that Deputies Edwards and Laws "booked [her] in."
 III. The Trial Court's Error In Failing To Instruct On The Lesser Included Offense Of Simple Assault Was Prejudicial
In connection with the events at the jail, defendant was convicted of assault by means likely to produce great bodily injury. (§ 245, subd. (a)(1).) Defendant asserts that the trial court erred in failing to instruct the jury, sua sponte, on simple assault as a lesser included offense to assault by means likely to produce great bodily injury, and that the error was prejudicial. We agree.
A trial court has a sua sponte duty in a criminal case to instruct on the general principles of law that are relevant to the issues raised by the evidence. (People v.Breverman (1998) 19 Cal.4th 142, 154.) "That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation] but not when there is no evidence that the offense was less than that charged. [Citations.]" (Ibid.) Simple assault is a lesser included offense of assault by means likely to produce great bodily injury. (People v.Rupert (1971) 20 Cal.App.3d 961, 968.)
The use of hands or feet alone is sufficient to support a conviction of assault by means of force likely to produce great bodily injury. (People v. Aguilar (1997)16 Cal.4th 1023, 1028; People v. Wingo (1975) 14 Cal.3d 169,176.) A `"trial court may properly refuse to instruct upon simple assault where the evidence is such as to make it clear that if the defendant is guilty at all, he is guilty of the higher offense [felonious assault].' [Citations]" (Peoplev. Berry (1976) 18 Cal.3d 509, 519.) In People v.Berry, the defendant admitted that he choked the victim into unconsciousness. (Ibid.) Such evidence, the court held, "necessarily indicates force likely to produce great bodily injury." (Ibid.)
Although the use of hands and feet alone is sufficient to support a conviction for assault by means of force likely to produce great bodily injury (People v. Aguilar, supra,16 Cal.4th at p. 1028; People v. Wingo, supra,14 Cal.3d at p. 176), the evidence in this case was such that a jury could reasonably have found defendant did not use her hands in a manner that was likely to produce great bodily injury to Officer Gomez. Unlike the evidence presented inPeople v. Berry, supra, 18 Cal.3d 509, the prosecution in this case did not present evidence that necessarily indicated force likely to produce great bodily injury. Instead, the prosecution presented Officer Gomez's testimony that defendant charged at her, pushed her, and struck her under her arms resulting in bruising, and Officer Olivarez's testimony describing the struggle between defendant and Officer Gomez as a "shoving match." Neither Officer Gomez nor Officer Olivarez stated in their written reports of the incident that defendant had struck Officer Gomez. Accordingly, the trial court erred in failing to instruct on the lesser included offense of simple assault. (People v. Breverman, supra,19 Cal.4th at p. 154; People v. Rupert, supra,20 Cal.App.3d at p. 968.)
We review a trial court's error in failing to instruct on a lesser included offense for prejudice under People v.Watson (1956) 46 Cal.2d 818, 836. (People v.Breverman, supra, 19 Cal.4th at p. 178.) Under Peoplev. Watson, "[a] conviction of the charged offense may be reversed in consequence of this form of error only if, `after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears `reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred (Watson,supra, 46 Cal.2d 818, 836)." (Ibid., footnote omitted.)
The evidence showed that defendant engaged in a lengthy struggle or shoving match with Officer Gomez that may have lasted, at Officer Gomez's estimate, for 20 to 30 minutes.[5] During the struggle defendant pushed and struck Officer Gomez and caused bruises under both of Officer Gomez's arms, on her biceps, and on her left arm. Neither officer testified that defendant behaved in a particularly violent manner during the struggle or that defendant struck Officer Gomez numerous times or with such force that great bodily injury reasonably might be expected to result. Given the state of the evidence, it is reasonably probable that the jury would have found defendant guilty of simple assault rather than assault by means of force likely to produce great bodily injury had it been properly instructed. (People v. Breverman, supra, 19 Cal.4th at p. 178,People v. Watson, supra, 46 Cal.2d at p. 836.) Accordingly, we reverse defendant's conviction for assault by means of force likely to produce great bodily injury.
 IV. The Instructions On The Resisting An Executive Officer Offense
With respect to the resisting an executive officer offense at the premises, defendant contends that the trial court erred in failing to instruct the jury with a unanimity instruction, failed to define force or violence, and failed to instruct on the lesser included offense of resisting an officer without force or violence in violation of section 148, subdivision (a)(1). The trial court did not prejudicially err.
A. The Unanimity Instruction[6]
In a criminal case, a defendant is entitled to a unanimous jury verdict. (People v. Russo (2001) 25 Cal.4th 1124,1132.) "Additionally, the jury must agree unanimously the defendant is guilty of a specific crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (Ibid.) When the "`circumstances of the case so dictate,'" a trial court has the sua sponte duty to give a unanimity instruction. (People v.Riel (2000) 22 Cal.4th 1153, 1199.)
"The unanimity instruction is not required when the acts are so closely connected in time as to form part of one transaction. [Citations.] This branch of the `continuous conduct' exception [citation] applies if the defendant tenders the same defense or defenses to each act and if there is no reasonable basis for the jury to distinguish between them. [Citations.]" (Peoplev. Crandell (1988) 46 Cal.3d 833, 875, overruled on another point in People v. Crayton (2002)28 Cal.4th 346, 364-365; People v. Stankewitz (1990)51 Cal.3d 72, 100; People v. Intyre (1981) 115 Cal.App.3d 899,908-911 [a unanimity instruction need not be given as to two acts of oral copulation that occurred within a matter of minutes of each other during a sexual attack].)
About 10:30 a.m., on March 29, 2007, Los Angeles County Sheriff's Deputies Charlene Edwards and Gary Laws arrived at defendant's apartment at 1159 East 10th Street, in Long Beach, to execute a writ of possession — that is, to evict defendant. The inner door to defendant's apartment was open, but the security screen door was closed. The deputies contacted defendant through the security door and advised her that she was being evicted. Deputy Edwards showed defendant the writ of possession. Defendant told the deputies they did not have the authority to be there and that she was not going to be evicted. The deputies asked defendant if she had paperwork showing that "something in the process had changed."
Defendant claimed she had paperwork that showed she should not be evicted. Defendant locked the screen door and went to get the paperwork. After defendant left the screen door, the deputies had a locksmith pick the lock, and the deputies entered defendant's apartment. Defendant approached the deputies with paperwork. Deputy Laws reviewed the paperwork, none of which prevented the eviction from proceeding.
The deputies advised defendant that her paperwork would not stop her eviction and that she would have to collect a few things and leave. Defendant became "really upset." Defendant "scuffled through her paperwork on her desk. She started making phone call, telling us: No, no, no." Defendant again stated that the deputies did not have the authority to be there and that she would not be evicted. The deputies tried to keep a calm demeanor and explain the process to defendant. Defendant became loud and stated repeatedly that the only way she would go was in a body bag. Defendant's tone was "real adamant," and she was "real belligerent in her state of mind that she was not going anywhere."
Due to defendant's size and how adamant she was about not leaving her apartment, the deputies knew that they would not be able to handle defendant if the use of force became necessary. At some point, Deputy Laws stepped outside and called for backup. The deputies told defendant that they did not want to arrest her, and that it would be easier for everyone if she left. Deputy Edwards told defendant that there was no discretion in enforcing the court order.
Two Long Beach Police officers, Officers Brad Dinsdale and Chairez, arrived and tried to convince defendant to leave. Defendant stated that she was not leaving unless it was in a body bag. At some point, Deputy Laws informed defendant that she was going to be placed under arrest. Deputies Edwards and Laws reached for defendant's wrists. Defendant screamed, "No," jerked away from Deputy Edwards, and sat down at and held onto her desk.
Deputy Edwards and Officer Chairez grabbed defendant's right wrist. Deputy Edwards told defendant to relax and to stop resisting. Defendant loudly screamed, "No," and bear-hugged the desk. Deputy Edwards found defendant to be "very strong," and concluded that she would be unable to pry defendant's arm from the desk.
According to Officer Dinsdale, defendant was "freakishly strong." Officer Dinsdale decided that the current level of force would not be sufficient to gain control over defendant due to her large size and "extremely erratic and violent behavior," so he tasered defendant's right shoulder. Defendant slid out of her chair onto the floor where she continued to struggle against the deputies' and officers' efforts to subdue her. Despite Officer Dinsdale's repeated, additional orders to submit or be tasered, defendant continued to struggle. After Officer Dinsdale tasered defendant twice more, the deputies were able to place a handcuff on defendant's right wrist. Defendant continued to struggle, attempting to kick Officer Dinsdale in the groin. Officer Dinsdale tasered defendant two more times before the deputies were able to place defendant's left wrist in a handcuff. Deputy Edwards testified that defendant stopped struggling, but refused to stand for about three to five minutes.
Defendant then complied as the officers began to take her out of the apartment. When they reached the door, however, defendant began to struggle, twisting and contorting her body so that she would not pass through the door. When the officers reached the building's narrow stairwell, they had to release their hold of defendant so they could go down the stairs. Defendant pulled away from the officers and fell down the second half of the stairs. Paramedics were called, defendant refused treatment, and defendant was taken to the hospital. After being checked for injuries, defendant was booked at the Long Beach Police Department.
Defendant's actions in resisting, first at her desk, then at the doorway, and then at the stairwell were "so closely connected in time as to form part of one transaction." (People v. Crandell, supra, 46 Cal.3d at p. 875;People v. Stankewitz, supra, 51 Cal.3d at p. 100;People v. McIntyre, supra,115 Cal.App.3d at pp. 908-911.) Accordingly, the trial court properly did not give the jury a unanimity instruction.
 B. The Trial Court's Failure To Define "Force Or Violence" With Respect To The Resisting An Executive Officer Offense
The trial court instructed the jury with CALJIC No. 7.50[7] on the resisting an executive officer offense. The trial court did not instruct the jury on the definition of "force or violence" for this offense. Defendant contends that the trial court, consistent with the Use Note for CALJIC No. 7.50, should have instructed the jury on the definition of "force or violence" with CALJIC No. 16.141.[8] The failure to do so, defendant contends was prejudicial error.
Defendant asserts that she was prejudiced by the lack of an instruction defining "force or violence" because the evidence showed that she passively resisted the deputies and officers by holding onto her desk, "tensing up," or pulling away from them. The record does not support defendant's claimed "passive resistance." The record shows that defendant jerked away from Deputy Edwards when the deputy tried to handcuff defendant, defendant "struggled" against being handcuffed, defendant struggled when the deputies and officers attempted to take her out the apartment door, and defendant pulled away from the deputies and officers when they attempted to take her down the stairs. Such conduct meets the definition of "force or violence in CALJIC No. 16.141 — the "application of physical force against the person of another, even though it causes no pain or bodily harm or leaves no mark and even though only the feelings of such person are injured by the act. The slightest unlawful touching, if done in an insolent, rude, or an angry manner, is sufficient." Because any reasonable juror would have found that defendant used "force or violence" in resisting the deputies and officers, the trial court's failure to instruct the jury on the definition of "force or violence" did not contribute to defendant's conviction of the resisting an executive officer offense and, thus, was harmless beyond a reasonable doubt. (Neder, supra, 527 U.S. at pp. 15-16; Chapman v.California, supra, 386 U.S. 18].)
 C. Any Error In Failing To Instruct The Jury On Resisting An Officer Without Force Or Violence In Violation Of Section 148, Subdivision (a)(1) As A Lesser Included Offense Of Resisting An Executive Officer With Force Or Violence In Violation Of Section 69 Was Harmless
Defendant contends that the trial erred in failing to instruct the jury, sua sponte, on resisting an officer without force or violence in violation of section 148, subdivision (a)(1) as a lesser included offense of resisting an executive officer with force or violence in violation of section 69.[9] We hold that even if the trial court erred in failing to instruct on a violation of section 148, subdivision (a)(1), any such error was harmless.
The legal elements of a violation under section 148, subdivision (a)(1) are as follows: "`"(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties."` [Citation.]" (Yount v.City of Sacramento (2008) 43 Cal.4th 885, 894-895.) As explained above, a trial court has a sua sponte duty in a criminal case to instruct on lesser included offenses "when the evidence raises a question as to whether all of the elements of the charged offense were present [citation] but not when there is no evidence that the offense was less than that charged." (People v. Breverman, supra, 19 Cal.4th at p. 154.)
Relying on People v. Lacefield (2007)157 Cal.App.4th 249, 254-259, defendant argues that resisting an officer without force or violence in violation of section 148, subdivision (a)(1) is a lesser included offense of resisting an executive officer by force or violence in violation of section 69. Other cases have taken a contrary view. (See People v.Lopez (2005) 129 Cal.App.4th 1508, 1532-1533 People v. Belmares (2003) 106 Cal.App.4th 19, 22-26.) Assuming, for purposes of this opinion that section 148, subdivision (a)(1) is a lesser included offense of section 69, we nevertheless hold that any failure to instruct on section 148, subdivision (a)(1) was harmless.
Deputy Edwards testified that defendant held onto her desk, "tensed up," and otherwise refused to cooperate with the deputies when they attempted to place her in handcuffs. If section 148, subdivision (a)(1) is a lesser included offense of section 69, these parts of Deputy Edwards's testimony would justify an instruction of resisting an officer without force or violence in violation of section 148, subdivision (a)(1). (SeePeople v. Breverman, supra, 19 Cal.4th at p. 154.)
As explained above, we review a trial court's error in failing to instruct on a lesser included offense for prejudice underPeople v. Watson, supra, 46 Cal.2d 818. (People v. Breverman, supra, 19 Cal.4th at p. 178.) Under that standard, a conviction is not reversed unless it is reasonably probable that the defendant would have received a more favorable outcome if the trial court had properly instructed the jury. (Ibid.) Considering all of the evidence presented to the jury, any error in failing to instruct the jury on a violation of section 148, subdivision (a)(1) was harmless.
In addition to her other testimony, Deputy Edwards testified that defendant "struggled" with the deputies and officers. Officer Dinsdale testified that defendant was engaged in "extremely erratic and violent behavior," and that she was "violently resisting a lawful order." Officer Dinsdale could not remember the positions of the deputies and Officer Chairez at the time he first tasered defendant because there was a lot of movement due to defendant's "fighting." Officer Dinsdale testified that despite being tasered, defendant "continued to wrestle with the two deputies and officer Chairez." According to Officer Dinsdale, defendant "violently" pulled away from and attempted to kick the deputies and Officer Chairez. Asked to describe what he meant when he testified that defendant "violently" pulled away from the deputies and Officer Chairez, Officer Dinsdale testified that "[a]s they were trying to take her arms to put them behind her back to handcuff her and take her into custody, she would pull away with a lot of force, a lot of violence of action, as well as followed up by attempting to kick, attempting to swing at the officers and the deputies." Despite repeated warnings to stop resisting or be tasered again, defendant "kept fighting with the two deputies and the officer." After being tasered a second time, defendant continued to kick at the deputies and Officer Chairez and "people [were] getting pushed around." A third application of the taser did not stop defendant's "violent actions" — defendant continued to fight and kick. After Officer Dinsdale tasered defendant a fourth time, defendant continued to fight, kick, and pull away, and tried to kick Officer Dinsdale in the groin. In light of all of the evidence presented to the jury, it is not reasonably probable that defendant would have received a more favorable outcome if the trial court had instructed the jury on resisting an officer without force or violence in violation of section 148, subdivision (a)(1). (People v. Breverman, supra, 19 Cal.4th at p. 178,People v. Watson, supra, 46 Cal.2d at p. 836.)
V. There Was No Cumulative Error*
Defendant contends that even if any one of the errors made in connection with his resisting an executive officer, attempted escape by force or violence, or assault by means like to produce great bodily injury convictions is insufficient to establish prejudice, the cumulative prejudicial effect of the errors requires that all of his convictions be reversed. Holding that the trial court prejudicially erred in instructing the jury with respect to the attempted escape by means of force or violence and assault by means of force likely to produce great bodily injury offenses, we have reversed those convictions. The trial court's instructional errors with respect to those offenses did not affect defendant's conviction for resisting an executive officer. Accordingly, we do not reverse defendant's conviction for resisting an executive officer on the ground of cumulative error.
[5] Officer Olivarez testified that she did not know how long the struggle lasted, that is "seemed like forever." At the same time, Officer Olivarez expressed doubt that the struggle lasted "that long," but that it lasted at least for "several minutes."
[6] CALJIC No. 17.01 provides:
The defendant is accused of having committed the crime of [in Count ___]. The prosecution has introduced evidence for the purpose of showing that there is more than one [act] [or] [omission] upon which a conviction [on Count ___] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of the [acts] [or] [omissions]. However, in order to return a verdict of guilty [to Count ___], all jurors must agree that [he] [she] committed the same [act] [or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act] [or] [omission] agreed upon be stated in your verdict."
[7] CALJIC No. 7.50 provided as follows:
"Defendant is accused in Count 1 of having violated section 69
of the Penal Code, a crime.
"Every person who willfully and unlawfully attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon that officer by law, or who knowingly resists, by the use of force or violence, an executive officer in the performance of his or her duty, is guilty of a violation of Penal Code section 69, a crime.
"An `executive officer' is a public employee whose lawful activities are in the exercise of a part of the sovereign power of the governmental entity employer, and whose duties are discretionary, in whole or in part. Any employee charged with the responsibility of enforcing the law is an executive officer.
"In order to prove this crime, each of the following elements must be proved:
"1. A person knowingly and unlawfully resisted an executive officer in the performance of his or her duty; and
"2. The resistance was accomplished by means of force or violence."
[8] CALJIC No. 16.141 provides:
"As used in the foregoing instruction [CALJIC No. 16.140.1 — Battery Against Spouse, etc.], the words `force' and `violence' are synonymous and mean any [unlawful] application of physical force against the person of another, even though it causes no pain or bodily harm or leaves no mark and even though only the feelings of such person are injured by the act. The slightest [unlawful] touching, if done in an insolent, rude, or an angry manner, is sufficient.
"It is not necessary that the touching be done in actual anger or with actual malice; it is sufficient if it was unwarranted and unjustifiable.
"The touching essential to a battery may be a touching of the person, of the person's clothing, or of something attached to or closely connected with the person."
[9] Section 148, subdivision (a)(1) provides:
"Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."
 DISPOSITION
Defendant's convictions for attempted escape by force or violence and assault by means of force likely to produce great bodily injury are reversed. The judgment is otherwise affirmed.
Armstrong, Acting P. J., concurred.
[1] All statutory citations are to the Penal Code unless otherwise noted.
[2] At trial. Officer Gomez estimated that defendant weighed over 200 pounds at the time of the incident. In her report. Officer Gomez stated that defendant weighed 300 pounds.
[3] The clerk's transcript indicates that a court trial on the prior conviction allegation was held on August 13, 2007. The trial court's minutes for that trial do not reflect a finding by the trial court. The record on appeal does not include a transcription for the prior conviction trial. Thereafter, defendant moved to strike the prior — the clerk's transcript does not contain a copy of defendant's written motion (referred to by the trial court in ruling on defendant's motion) and the trial court granted the motion.
[4] Subdivision (b)(2) of section 4532 prescribes the punishment for a violation of subdivision (b)(1) that was accomplished by force or violence.
* See footnote, ante, page 808.